# FOR PUBLICATION



FILED

Apr 23 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOANNA S. ROBINSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1209-CR-561 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Charles Carter Wicks, Judge
Cause No. 20D05-1110-CM-507

**April 23, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A sheriff's deputy observed Joanna S. Robinson briefly drive onto the fog line twice. The deputy decided to stop Robinson for "unsafe lane movement." Tr. at 24. Based on evidence obtained from this stop, Robinson was convicted of operating while intoxicated and possession of marijuana. On appeal, Robinson challenges the admission of the evidence obtained from the stop, which she had sought unsuccessfully to exclude from trial on the basis that the traffic stop was not supported by reasonable suspicion. The State argues that the deputy had reasonable suspicion that she was impaired. We conclude that Robinson's brief contact with the fog line – at night on a road with some curves – was not sufficient to establish reasonable suspicion that Robinson was impaired. Therefore, the evidence obtained from the stop should not have been admitted, and Robinson's convictions must be reversed.

**Facts and Procedural History**

Casey Claeys, a deputy with the Elkhart County Sheriff's Department, worked third shift on October 15, 2011. Around 1:00 a.m., he began following a PT Cruiser on County Road 4. According to Deputy Claeys, he saw "the PT Cruiser drive off the right side, which was the south side of the road, twice." *Id.* Deputy Claeys decided to initiate a traffic stop for "unsafe lane movement." *Id.*

Robinson was driving the PT Cruiser. Deputy Claeys noticed that she had glossy, bloodshot eyes, slurred speech, and the odor of alcohol on her breath. Robinson admitted to having drunk one beer, and she failed three field sobriety tests. Without being prompted, Robinson told Deputy Claeys that she had marijuana in her bra, which she shook out onto the

2

roadway. Deputy Claeys transported Robinson to the jail, where a certified breath test was administered. The test indicated that Robinson had .09 grams of alcohol per 210 liters of breath.

Robinson was charged with operating a vehicle with a suspended license, a class A misdemeanor; possession of marijuana, a class A misdemeanor; operating a vehicle while intoxicated, a class A misdemeanor; and operating a vehicle with an alcohol concentration of at least .08 grams per 210 liters of breath, a class C misdemeanor. Robinson filed a motion to suppress the evidence obtained from the traffic stop. The motion asserted that the video from Deputy Claeys's vehicle showed that she stayed within her lane and that he therefore lacked reasonable suspicion to conduct a traffic stop.

On July 6, 2012, the trial court held a combined bench trial and hearing on the motion to suppress. Deputy Claeys was the only witness. Deputy Claeys testified that the road had a center line and a white fog line along the outer edge of the road. He asserted that both of the passenger-side tires of Robinson's vehicle "were over the fog line … [c]ompletely off the roadway." *Id*. at 48. Deputy Claeys acknowledged that Robinson "immediately" returned to her lane each time. *Id*. at 51. Robinson's driving record, the breath test results, and the video from Deputy Claeys's vehicle were also admitted into evidence. The court took the matter under advisement.

On July 23, 2012, the trial court issued a written order denying Robinson's motion to suppress and entering judgment on two of the charges. The court indicated that it had viewed the video several times and could not "conclude from the video that the defendant's vehicle

3

actually left the roadway." Appellant's App. at 33. However, the court found that the video "does show the vehicle veering on two occasions onto the white fog line." *Id.* The court concluded that swerving onto the fog line twice was sufficient to justify a brief investigatory stop.

The court concluded that, based on contradictory information in Robinson's driving record, the State had failed to prove beyond a reasonable doubt that her license was suspended at the time of the traffic stop. The court found Robinson guilty of the remaining charges, but did not enter judgment on the class C misdemeanor driving offense. Robinson now appeals.

**Discussion and Decision**

Robinson argues that the trial court erred by denying her motion to suppress and admitting the evidence obtained from the traffic stop. Robinson does not specify whether she is challenging the stop based on the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution. However, she asserts that the "central issue in this case hinges on the *Terry* doctrine." Appellant's Br. at 2 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). We understand this to be an invocation of the Fourth Amendment. *See Joseph v. State*, 975 N.E.2d 420, 424 n.6 (Ind. Ct. App. 2012) (stating that any claim under Article 1, Section 11 of the Indiana Constitution was waived for failure to make a separate argument pursuant to that provision).

Because Robinson is appealing following a completed trial, the issue before us is "properly framed as whether the trial court abused its discretion by admitting the challenged

4

evidence at trial." *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied*, (2010).

> Our standard of review of a trial court's determination as to the admissibility of evidence is for an abuse of discretion. *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). We will reverse only if a trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id*. We will not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Collins* [*v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*)]. However, we must also consider the uncontested evidence favorable to the defendant. *Id*. Although a trial court's determination of historical facts is entitled to deferential review, we employ a *de novo* standard when reviewing the trial court's ultimate determinations of reasonable suspicion and probable cause. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005) (citing *Ornelas v. United States*, 517 U.S. 690, 695-99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

*Id*. (footnote omitted).

"An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." *Ornelas*, 517 U.S. at 693.

> Reasonable suspicion is a "somewhat abstract" concept, not readily reduced to "a neat set of legal rules." [*United States v. Arvizu*, 534 U.S. 266, 274 (2002)]. When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances" of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Id*. at 273, 122 S.Ct. [at 750]. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Francis v. State*, 764 N.E.2d 641, 644 (Ind. Ct. App. 2002).

*Moultry v. State*, 808 N.E.2d 168, 171 (Ind. Ct. App. 2004). The State bears the burden of proving that an investigatory stop was not violative of the constitutional protections against unreasonable searches and seizures. *State v. Smith*, 638 N.E.2d 1353, 1355 (Ind. Ct. App. 1994). When an investigatory stop is not supported by reasonable suspicion, the evidence

collected as a result is excluded from trial pursuant to the "fruit of the poisonous tree" doctrine. *Sanchez v. State*, 803 N.E.2d 215, 223 (Ind. Ct. App. 2004) (citing *Wong Sun v. United States*, 371 U.S. 407, 487-88 (1963)), *trans. denied*.

The State argues that this case is similar to *State v. McCaa*, 963 N.E.2d 24 (Ind. Ct. App. 2012), *trans. denied*. In that case, Newton County Sherriff's Sergeant Shannon Cothran was at the scene of an accident on U.S. Highway 41. Sergeant Cothran received a dispatch "concerning 'various' reports of a semi-trailer truck being driven erratically southbound toward the accident site." *Id*. at 27. Sergeant Cothran observed a trash hauler drive off the road twice within the course of about half a mile as it approached the accident site. It was also driving slowly in relation to the posted speed limit.

With assistance from another deputy, Sergeant Cothran initiated a traffic stop. The driver, Johnnie McCaa, claimed that he had swerved because he was eating lunch and had spilled his pop. Sergeant Cothran observed that there was a spilled soft drink can on the floor of the truck's cabin and did not immediately observe any signs of intoxication. Nevertheless, Sergeant Cothran wanted to investigate further. However, due to the accident and the traffic stop, traffic in the southbound lanes of U.S. Highway 41, a busy road, was now completely stopped. Sergeant Cothran decided to have McCaa move his truck to a gas station about two miles down the road. As Sergeant Cothran followed McCaa to the gas station, he saw McCaa drive off the road three more times. McCaa failed three field sobriety tests, and a urine sample collected pursuant to a warrant revealed that he had drugs in his system.

6

McCaa was charged with operating while intoxicated, and he successfully moved to suppress the evidence obtained after the initial stop.

The main issue in *McCaa* was whether it was permissible for Sergeant Cothran to continue the investigation at another location. Under the unusual circumstances of the case, we determined that the officer's actions were justified. *Id*. at 31. By the time McCaa reached the gas station, dispatch had received multiple reports of McCaa's erratic driving, and Sergeant Cothran personally observed McCaa drive off the roadway five times.

*McCaa* is distinguishable. In this case, the trial court found that Robinson had driven onto the fog line, but was not convinced that she had actually driven off the roadway. Robinson drifted to the right twice, and Deputy Claeys acknowledged that she "immediately" corrected her course. Tr. at 51. The trial court acknowledged that Robinson's driving was not inconsistent with that of a driver who was momentarily distracted. Robinson's driving was far less erratic than that of McCaa, who actually drove off the road at least five times and was driving unusually slow.

Both parties discuss *Barrett v. State*, 837 N.E.2d 1022 (Ind. Ct. App. 2005), *trans. denied* (2006). In that case, the Tippecanoe County Sheriff's Department received a tip from a Meijer employee, who reported that two people had purchased several boxes of cold medication, which can be used to manufacture methamphetamine. The Meijer employee indicated that the individuals were driving a blue Chevrolet Geo Tracker. Sergeant Terry Ruley followed the vehicle from the Meijer parking lot onto Interstate 65. After following the vehicle for several miles, Sergeant Ruley observed that it drifted toward the shoulder and

7

its passenger-side tires were on the fog line for thirty to fifty yards. Sergeant Ruley believed that this was a sign of impairment and initiated a traffic stop.

The vehicle was being driven by Joseph Kelly, and Cynthia Barrett was a passenger. Kelly and Barrett consented to a search of the vehicle, and officers found several items used to manufacture methamphetamine. After being taken into custody, Barrett admitted that she and Kelly had purchased the items so that Kelly and her ex-husband could manufacture methamphetamine, that they had previously attempted to manufacture methamphetamine, and that they intended to sell the drugs. Barrett consented to a search of her home, which revealed additional evidence of manufacturing. Barrett was charged with and convicted of several drug-related offenses.

On appeal, Barrett argued that Sergeant Ruley lacked reasonable suspicion to conduct the traffic stop. A majority concluded that driving on the fog line was a sign of impairment, and combined with the tip, provided reasonable suspicion for the stop. *Id.* at 1027-28.

Judge Mathias dissented, opining that briefly touching the fog line was insufficient to establish reasonable suspicion: "Here, while the officer testified that he believed the driver was possibly intoxicated, he also admitted that no traffic violation occurred, [and] that there were many reasons a driver could drift onto the fog line without being intoxicated …." *Id.* at 1031 (Mathias, J., dissenting). Judge Mathias cited several cases from other jurisdictions to support his conclusion, including *United States v. Colin,* 314 F.3d 439, 446 (9th Cir. 2002) (car's touching the right fog line and the center yellow line each for ten seconds after legitimate lane changes did not give officer reasonable suspicion of driving under the

8

influence); *United States v. Freeman,* 209 F.3d 464, 466-67 (6th Cir. 2000) (a motor home's brief entry into the emergency lane does not constitute probable cause that the driver was intoxicated); *United States v. Gregory,* 79 F.3d 973, 978 (10th Cir. 1996) (where officer did not conduct a road sobriety test after stopping the defendant for briefly crossing into the right emergency shoulder lane, he did not have reasonable suspicion that the defendant was intoxicated); *United States v. Ochoa,* 4 F. Supp. 2d 1007, 1012 (D. Kan. 1998) (single drift onto the shoulder did not justify stopping defendant); *State v. Tague,* 676 N.W.2d 197, 205-06 (Iowa 2004) (single incident of crossing left edge line for a brief moment did not meet reasonableness test under the state constitution); and *State v. Binette,* 33 S.W.3d 215, 219-20 (Tenn. 2000) (occasional drifting from the center of the lane did not amount to reasonable suspicion).  *See also United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993) ("[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy."), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 786-87 (10th Cir. 1995).

The *Barrett* majority's analysis of the driver's swerving onto the fog line was intertwined with analysis of the tip concerning possible drug activity, a circumstance not present here.  Nevertheless, to the extent that *Barrett* may be read to stand for the proposition that briefly driving on the fog line is necessarily sufficient to establish reasonable suspicion of impaired driving, we acknowledge that it likely goes too far.[1]  Further review of the cases

---

[1]  The author of this opinion also wrote the majority opinion in *Barrett*.

cited in the dissent, their progeny, and additional authorities from other jurisdictions leads us to the conclusion that brief contact with the fog line or swerving within a lane ordinarily is not sufficient to establish reasonable suspicion of impaired driving. *See*, *e.g.*, *United States v. Sugar*, 322 F.Supp.2d 85, 91-92 (D. Mass. 2004) (crossing fog line once was not a violation and did not establish reasonable suspicion); *State v. Livingston*, 75 P.3d 1103, 1105-06 (Ariz. Ct. App. 2003) (minor breach of the shoulder line on a curvy road did not establish reasonable suspicion), *review denied* (2004); *People v. Leyendecker*, 787 N.E.2d 358, 362 (Ill. App. Ct. 2003) (crossing over fog line while going around curve did not establish reasonable suspicion), *appeal denied*; *State v. Ross*, 149 P.3d 876, 880 (Kan. 2007) (briefly driving on shoulder did not provide reasonable suspicion), *review denied*; *Rowe v. State*, 769 A.2d 879, 889-91 (Md. 2001) (two instances of touching or crossing fog line did not establish reasonable suspicion); *Warrick v. Comm'r of Pub. Safety*, 374 N.W.2d 585, 585–86 (Minn. Ct. App. 1985) ("subtle" weaving within lane insufficient to support reasonable suspicion); *State v. Prado*, 186 P.3d 1186, 1187 (Wash. 2008) ("A vehicle crossing over the line for one second by two tire widths on an exit lane does not justify a belief that the vehicle was operated unlawfully.").

That is not to say that swerving within a lane or crossing the fog line can never provide reasonable suspicion justifying a traffic stop; the emphasis must remain on the totality of the circumstances. *People v. Davis*, 870 N.Y.S.2d 602, 603 (N.Y. App. Div. 2009) ("Here, we decline to hold that fog line encroachment can never be the basis for a valid traffic stop as a matter of law. However, in this case, we are mindful that [the officer] only

10

testified as to brief contacts with the fog line prior to the stop. He did not indicate that, for example, defendant was weaving, driving erratically or even that he drove onto the shoulder of the road .…"); *State v. Pratt*, 932 A.2d 1039, 1041-42 (Vt. 2007) ("[W]e do not announce a 'bright line' rule that intra-lane weaving creates reasonable suspicion to stop in all cases. Instead, we continue to hold that reasonable suspicion must be based on the totality of the circumstances. Thus, … we do not quarrel [with] cases [holding] that slight degrees of intra-lane weaving alone do not justify a stop."); *Neal v. Commonwealth*, 498 S.E.2d 422, 425 (Va. Ct. App. 1998) ("We agree with our sister states that weaving within a single traffic lane is an articulable fact which may give rise to a reasonable suspicion of illegal activity. An isolated instance of mild weaving within a lane is not sufficiently erratic to justify an investigatory stop. The test is one of reasonableness under 'the totality of the circumstances.'"); *State v. Post*, 733 N.W.2d 634, 641 (Wis. 2007) ("Thus, we adopt neither the bright-line rule proffered by the State that weaving within a single lane may alone give rise to reasonable suspicion, nor the bright-line rule advocated by Post that weaving within a single lane must be erratic, unsafe, or illegal to give rise to reasonable suspicion. Rather, we maintain the well-established principle that reviewing courts must determine whether there was reasonable suspicion for an investigative stop based on the totality of the circumstances").

Thus, swerving within a lane or onto the fog line may or may not give rise to reasonable suspicion. Factors to consider may include whether there is repeated swerving, whether there is swerving over an extended distance or period of time, whether the driver

narrowly avoids hitting an object or causing an accident, whether road or weather conditions might explain the driver's conduct, and whether the driver overcorrects when returning to the proper lane of travel. *See*, *e.g.*, *United States v. Ozibirn*, 189 F.3d 1194, 1199 (10th Cir. 1999) (in finding that reasonable suspicion had been established, the court considered the lack of road or weather conditions that would explain the defendant's repeated drifting onto the shoulder); *Auburn v. Dep't of Motor Vehicles*, 61 Cal. Rptr. 3d 15, 18-19 (Cal. Ct. App. 2007) (continuous weaving within lane for span of a block and almost hitting curb established reasonable suspicion); *Tyler v. State*, 161 S.W.3d 745 (Tex. Crim. App. 2005) (reasonable suspicion established where driver "'straddled' the white lane separating his traveling lane from the shoulder before returning 'erratically' to the traveling lane 'as if to turn at an angle'").

In this case, Robinson was driving late at night on a road with some curves. On two occasions, she briefly touched the fog line and then immediately returned to her lane. There is no indication that she swerved sharply or overcorrected. The trial court, which viewed the video several times, acknowledged that Robinson's driving was not inconsistent with a driver who was momentarily distracted. While we give weight to the trial court's findings of fact, the ultimate conclusion regarding reasonable suspicion is reviewed de novo. *Lindsey*, 916 N.E.2d at 238. Given the fact that it was dark, that the road had some curves, and that Robinson made only brief contact with the fog line, we conclude that the State failed to establish that the traffic stop was supported by reasonable suspicion that Robinson was

12

impaired. Therefore, the evidence obtained from the stop should not have been admitted.

We reverse her convictions, which were dependent on the improperly admitted evidence.

Reversed.

ROBB, C.J. and FRIEDLANDER, J., concur.