**FOR PUBLICATION**



**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GABRIEL ATKINSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 12A02-1302-CR-149 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLINTON SUPERIOR COURT
The Honorable Justin H. Hunter, Judge
Cause No. 12D01-1202-FD-117

**August 13, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In February 2012, a sheriff's deputy observed and followed Gabriel Atkinson as he drove along a highway in Clinton County. The deputy eventually stopped Atkinson based on Atkinson's repeated drifting from the far right side over the fog line and back to the center line. During the stop, Atkinson told the deputy that he was a habitual traffic violator ("HTV"). The State charged Atkinson with class D felony operating a vehicle as an HTV. Atkinson filed a pretrial motion to suppress the evidence obtained as a result of the traffic stop, which the trial court denied. At the ensuing bench trial, Atkinson renewed his objection when the evidence was introduced and admitted, and the trial court found him guilty as charged.

Atkinson now appeals, claiming that the traffic stop was illegal and that the trial court erred in denying his motion to suppress the evidence obtained during the stop. Finding that the totality of the circumstances supports the trial court's finding of reasonable suspicion for the investigatory traffic stop, we conclude that the evidence was admissible and therefore affirm.

**Facts and Procedural History**

Around 10:00 p.m. on February 12, 2012, Clinton County Sheriff's Deputy Dennis Tillman was traveling northbound on U.S. Highway 421. As he patrolled the highway, he observed Atkinson approaching from the north. Atkinson was driving with about one quarter of his vehicle over the fog line on the right side of the roadway. He corrected and drove toward the centerline. When the deputy passed him, he observed him in the rearview mirror,

drifting back to the right and over the fog line. Deputy Tillman immediately turned around and began following Atkinson. During the next three to four minutes, the deputy noticed that Atkinson rode with his right tires on the fog line for a few prolonged periods. When he got close enough to read Atkinson's license plate, he radioed the information to his department. Meanwhile, he observed Atkinson drift left to the centerline and back to the right and over the fog line as oncoming traffic approached. When Atkinson went past the fog line a couple more times, Deputy Tillman conducted a traffic stop.

Deputy Tillman approached Atkinson's vehicle and asked to see his license and registration. Atkinson identified himself and informed the deputy that he was an HTV. When asked about his drifting over the fog line, Atkinson shook the steering wheel and claimed that he was having an issue with his vehicle that was causing him to cross the fog line.

The State charged Atkinson with class D felony operating a vehicle as an HTV. Atkinson filed a motion to suppress the evidence concerning his identity and his status as an HTV, which was obtained during the traffic stop. The trial court conducted a hearing and subsequently denied Atkinson's motion. During the ensuing bench trial, Atkinson renewed his objection to the admission of the evidence, claiming that it had been obtained during an illegal traffic stop. Deputy Tillman testified extensively regarding his training in traffic safety and his experience with impaired drivers. He characterized Atkinson's driving as "erratic" and testified that he pulled him over because he showed signs of possible impairment. Tr. at 38. The trial court overruled Atkinson's continuing objection and found

3

him guilty as charged. Atkinson now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Atkinson challenges the trial court's denial of his motion to suppress the evidence concerning his identity and HTV status obtained as a result of the investigatory traffic stop. Because he is appealing after a completed trial, the issue is "properly framed as whether the trial court abused its discretion by admitting the challenged evidence at trial." *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied* (2010). When reviewing for an abuse of discretion, we reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We do not reweigh evidence, and we consider any conflicting evidence in the light most favorable to the trial court's ruling. *Id.* We consider any uncontested evidence favorable to the appellant and apply a de novo standard when reviewing the trial court's ultimate determination of reasonable suspicion. *Id.*

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. In order to justify a traffic stop, which is a seizure for purposes of the Fourth Amendment, a law enforcement officer must have reasonable suspicion of criminal conduct. *Clarke v. State*, 868 N.E.2d 1114, 1117 (Ind. 2007) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). This means that to justify an intrusion upon a private citizen's constitutionally protected interests, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The facts must be judged against an objective

4

standard, namely, "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id*. at 21-22 (citation omitted).

> Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances, but is generally satisfied when the facts *known to the officer at the moment of the stop*, along with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur.

*Coleman v. State*, 847 N.E.2d 259, 262 (Ind. Ct. App. 2006), *trans. denied* (2006) (emphasis added).

Atkinson asserts that because he did not actually cross over the center line and because crossing the fog line is not a traffic infraction, Deputy Tillman lacked reasonable suspicion to conduct an investigatory stop. In *Wells v. State*, 772 N.E.2d 487 (Ind. Ct. App. 2002), another panel of this Court emphasized the difference between reasonable suspicion and probable cause for an arrest, noting that the former requires "something more than an inchoate and unparticularized suspicion or hunch, but considerably something less than proof of wrongdoing by a preponderance of the evidence." *Id*. at 489 (citation omitted). Thus, the *Wells* court found the investigatory stop to be valid even though the defendant had not broken any traffic laws, where he had driven "in a manner consistent with that of intoxicated drivers," i.e., swerved within his lane toward the fog line and sidewalk. *Id*. at 490. Likewise, in *Barrett v. State*, 837 N.E.2d 1022 (Ind. Ct. App. 2005), *trans. denied* (2006), we found the investigatory stop to be valid under the Fourth Amendment, noting that although the driver had not broken any traffic laws before being pulled over, the officer observed signs of

5

impaired driving, i.e., drifting to the right, traveling on top of the fog line for thirty to fifty yards, and drifting back into the lane. *Id*. at 1026-27. Thus, both *Barrett* and *Wells* illustrate that the commission of an actual infraction is not a prerequisite to a determination of reasonable suspicion to conduct a stop.[1] Rather, in each case, the officer's observation of erratic driving was considered along with all other circumstances in determining whether the officer had reasonable suspicion to conduct an investigatory stop.

In arguing that the traffic stop was illegal, Atkinson relies heavily on our recent case of *Robinson v. State*, in which we held that "brief contact with the fog line or swerving within a lane ordinarily is not sufficient to establish reasonable suspicion of impaired driving." 985 N.E.2d 1141, 1146 (Ind. Ct. App. 2013), *trans. granted*. Notably, in *Robinson*, we refrained from drawing a bright-line rule with respect to whether swerving within a lane or onto the fog line amounts to reasonable suspicion to conduct a traffic stop. Instead, we reiterated that "the emphasis must remain on the totality of the circumstances," and we outlined factors to consider when assessing whether such driving behavior gives rise to reasonable suspicion sufficient to support an officer's decision to conduct an investigatory stop. *Id*. at 1147. These include:

> whether there is repeated swerving, whether there is swerving over an extended distance or period of time, whether the driver narrowly avoids hitting

---

[1] Atkinson correctly points out that in its order denying his motion to suppress, the trial court stated that he had committed an infraction, which served as a valid basis for the traffic stop. However, the trial court addressed the issue and corrected its error before pronouncing judgment during the bench trial. The court stated that, having far more detailed evidence before it at the time of trial, it determined that Deputy Tillman had an independent reason for conducting a valid stop: that Atkinson twice drove right of the fog line within a distance of a quarter of a mile, leading the deputy to believe he had encountered an impaired driver who might have been intoxicated, distracted, or falling asleep. Tr. at 89.

an object or causing an accident, whether road or weather conditions might explain the driver's conduct, and whether the driver overcorrects when returning to the proper lane of travel.

*Id*.

In *Robinson*, the totality of circumstances showed that while driving late at night on a curvy road, the defendant twice made brief contact with the fog line. *Id*. at 1148. Finding that such conduct was insufficient to establish reasonable suspicion for police to conduct an investigatory stop, we reversed her convictions for marijuana possession and operating while intoxicated, both of which were dependent on evidence obtained during the stop. *Id*.[2]

Here, the circumstances prompting Deputy Tillman's decision to stop Atkinson, while similarly involving a driver's contact with a fog line on a dark road, are distinguishable from those in *Robinson* in that Deputy Tillman observed more pronounced conduct over a protracted period of time under different road conditions. The deputy testified that when he first observed Atkinson approaching from the opposite direction, Atkinson went over the fog line to the extent that about one quarter of his vehicle was outside the line. Tr. at 16. He described Atkinson as drifting from one quarter over the fog line all the way to the far left portion of the lane, nearing the center line. After the deputy passed him, Atkinson drifted back across the fog line, with one quarter of the vehicle on the berm. Consequently, the deputy turned around and followed Atkinson for about three to four minutes. During that time, Atkinson drove for extended periods with his right wheels on the fog line, drifted

---

[2] We note that the Indiana Supreme Court recently granted transfer in *Robinson*, so we anticipate further clarification of the law in this area in the foreseeable future.

7

toward the center line, and then drifted back on top of the fog line when traffic approached. Deputy Tillman testified that shortly before he pulled Atkinson over, Atkinson crossed "right of the fog line a couple more times." *Id*. at 17. The deputy's dashboard video footage shows that, unlike Robinson's curvy road, Atkinson was traversing a straight stretch of highway. State's Ex. 2. Also, here, the berm consisted of about one foot of pavement, with grass and some ditches past its edges. Although Deputy Tillman never saw Atkinson's vehicle go past the paved portion of the berm and into the grass, his National Institute of Traffic Safety training and past experience with impaired drivers enabled him to evaluate the potential that Atkinson was impaired and could therefore pose a safety risk. Simply put, the deputy's testimony concerning his extended observation of Atkinson's driving behavior indicates that he had reasonable suspicion to believe that Atkinson was impaired and not merely experiencing a "momentary distraction" as Robinson did. *Robinson*, 985 N.E.2d at 1148.[3]

In sum, the State presented articulable facts and observations by Deputy Tillman, the totality of which are sufficient to support a finding of reasonable suspicion to conduct an investigatory stop of Atkinson. As such, we find no abuse of discretion in the trial court's admission of Atkinson's identity and statements made during the stop concerning his HTV status. Accordingly, we affirm.

---

[3] We also note that Deputy Tillman was in the process of running a license check on Atkinson's vehicle during the four-minute pursuit. When the deputy conducted the traffic stop, Atkinson immediately volunteered his status as an HTV, an independently discoverable fact. The "fruit of the poisonous tree" doctrine does not apply when the derivative evidence has an "independent source" or when the challenged evidence would have inevitably been properly obtained. *Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000).

Affirmed.

BARNES, J., and PYLE, J., concur.