## FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID RHODES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-321 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
Cause No. 49F18-1208-FD-55646

**October 18, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

David Rhodes ("Rhodes") appeals his conviction, following a bench trial, for two counts of Class D felony theft.[1]

We affirm.

## ISSUE

Whether the trial court abused its discretion by admitting into evidence a cell phone and a credit card found in Rhode's pocket during a patdown by police.

## FACTS

On August 12, 2012, around 5:30 a.m., Darryl Daniels ("Daniels"), an employee at the InTown Suites ("the hotel") on Post Road in Marion County, observed a lone male walking from car to car in the hotel parking lot and entering cars that were unlocked. Daniels called the police as he saw the man enter the first car. As Daniels talked to police dispatch and provided them with the suspect's description, the man entered a second car. When the man attempted to enter a third car, the car's alarm activated, and the man left the parking lot.

Indianapolis Metropolitan Police Department ("IMPD") Officer Charles King ("Officer King") arrived on the scene, and Daniels repeated his description of the suspect to Officer King. Daniels told the officer that the suspect breaking into the cars was an African American male, wearing a white t-shirt and "dark jeans" and carrying a case of

___

[1] Ind. Code § 35-43-4-2.

2

Budlight beer.[2] (Tr. 14). Daniels also told the officer that the suspect headed northbound near 25th Street when he left the hotel parking lot. Officer King radioed this information to other patrolling officers, including Officer Brian Durham ("Officer Durham"). Officer King then located the two victims from the hotel and discovered that one victim, Larry Morris ("Morris"), had a cell phone taken from his car and that the other victim, Ellen Cullinan ("Cullinan"), had a credit card taken from her car.

Upon receiving the suspect description and information from Officer King, Officer Durham "immediately searched" the area around the hotel and "located a black male wearing a white t-shirt carrying a box of beer that fit the description of the alleged suspect." (Tr. 25). Around 5:40 a.m., Officer Durham found this man, who was Rhodes, in a home improvement store parking lot on 25th Street, which was "immediately adjacent" to the hotel parking lot. (Tr. 25). Officer Durham approached Rhodes, who was carrying a case of Budlight, and asked him for his identification. Rhodes gave the officer his name, but he stated that he did not have any identification with him. Rhodes told the officer that he was "on parole for narcotics offenses." (Tr. 27). At that time, Officer Durham noticed that Rhodes had "a bulge in his pocket[.]" (Tr. 27). Officer Durham, who "was in fear of [Rhodes] having a weapon in his pocket because [Rhodes] told [him that] he was on parole for narcotics offenses[,]" performed a patdown to "feel the bulge." (Tr. 27). The officer then reached into Rhodes's pocket and retrieved a cell phone and a credit card. The credit card contained Cullinan's name. When Officer Durham asked Rhodes about the credit card, Rhodes asserted that it was his girlfriend's

---

[2] During Daniels's trial testimony, he described the pants of the suspect as "dark jeans" and "dark pants" (Tr. 14, 16).

card, but he was not able to provide the name on the card. Rhodes claimed that he had just been visiting this supposed girlfriend at the hotel. When Officer Durham asked Rhodes about the cell phone, Rhodes claimed that the phone was his, but he was unable provide the brand or phone number of the cell phone. Officer Durham then arrested Rhoades.

The State charged Rhodes with two counts of Class D felony theft. The trial court held a bench trial on February 12, 2013. Rhodes did not file a written motion to suppress, but at the beginning of the trial, Rhodes's counsel informed the trial court that he was going to be raising a "Motion to Suppress." (Tr. 11). Given time constraints, Rhodes's counsel and the trial court agreed that the court would wait to hear the suppression argument during trial.

During the victims' testimony, the State offered photographs of the cell phone and the credit card into evidence as State's Exhibits 3 and 4 (cell phone) and Exhibits 5 and 6 (credit card). Rhodes did not object and affirmatively stated that he had "[n]o objection" to the admission of these exhibits.[3] (Tr. 21, 23). Subsequently, after Officer Durham testified that he found a cell phone and a credit card with Cullinan's name on it in Rhodes's pocket and that Rhodes admitted to being at the hotel, Rhodes's counsel interrupted and stated that "this is about the time that I would move to suppress." (Tr. 28). Rhodes's counsel then argued that the stop and search of Rhodes was unconstitutional. (Tr. 28). The trial court denied Rhodes's motion and found Rhodes

---

[3] When Rhodes stated he had no objection to the admission of the cell phone, the trial court specifically questioned him by asking, "No objection?" (Tr. 21). Rhodes then confirmed that he had "[n]o objection." (Tr. 21).

guilty as charged. The trial court imposed concurrent sentences of 730 days in Marion County Community Corrections. Rhodes now appeals.

DECISION

Rhodes contends that the trial court abused its discretion by admitting into evidence the cell phone and credit card recovered from his pocket, arguing that the evidence was obtained during an illegal stop and search in violation of the Fourth Amendment to the United States Constitution.[4] The State contends that the evidence was admissible because it was properly seized pursuant either to a search incident to arrest or a proper *Terry* stop and search.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

We need not, however, review whether the trial court erred in admitting the cell phone and credit card into evidence because Rhodes failed to preserve the issue for appeal by failing to make a contemporaneous objection at trial. "A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue

---

[4] Rhodes contends that the trial court erred by denying his motion to suppress the evidence obtained during the stop and search of his person by police. Because this is an appeal following a completed trial, the issue is "'more appropriately framed'" as one of whether the trial court abused its discretion by admitting the evidence during the trial. *Brown v. State*, 929 N.E.2d 204, 206 n.1 (Ind. 2010) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)), *reh'g denied*.

Rhodes also generally asserts that this evidence was admitted in violation of Article I, Section 11 of the Indiana Constitution. Rhodes, however, has waived any state constitutional claim because he fails to provide a separate argument and analysis under this state constitutional provision. *See White v. State*, 772 N.E.2d 408, 411 (Ind. 2002); *Warren v. State*, 760 N.E.2d 608, 610 n.3 (Ind. 2002).

for appeal, whether or not the appellant has filed a pretrial motion to suppress." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. *See also Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."); *Hartman v. State*, 615 N.E.2d 455, 459-60 (Ind. Ct. App. 1993) (explaining that a party must make an objection to an exhibit when it is offered and before it is admitted into evidence and that an objection made after the evidence is admitted is untimely and unavailable for argument on appeal), *reh'g denied*.

Here, Rhodes contends that the cell phone and credit card were inadmissible, but he did not object when the State offered them into evidence. In fact, he affirmatively stated that he had "[n]o objection" to the admission of this evidence. (Tr. 21, 23). Consequently, Rhodes has waived appellate review of his claim of error. *See, e.g.*, *Brown*, 929 N.E.2d at 207 (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized); *Lewis v. State*, 755 N.E.2d 1116, 1123 (Ind. Ct. App. 2001) (holding that defendant's failure to challenge constitutionality of search until after evidence had been admitted and after he had completed his initial cross-examination of the officer resulted in waiver of appellate review).

Nevertheless, "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant

6

violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id.* (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The *Brown* Court explained that a showing of fundamental error arising from the admission of alleged illegally seized evidence is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Brown*, 929 N.E.2d at 207.

Just as in *Brown*, Rhodes does not assert any such claims in this case. Instead, Rhodes merely asserts that the evidence was improperly admitted, alleging that it was the product of an unconstitutional search.[5] Thus, Rhodes's claim of error does not rise to the level of fundamental error. *See id.* (holding that a claim of error asserting that evidence was unlawfully seized, without more, does not constitute fundamental error). Because Rhodes did not object to the admission of the evidence at issue and has failed to demonstrate any fundamental error in the admission of the evidence, we need not address the issue of whether the search of his person was lawful. *See, e.g.*, *Brown*, 929 N.E.2d at 208 (explaining that it is not necessary to resolve the issue of whether a search was lawful

---

[5] Indeed, Rhodes fails to acknowledge his lack of objection at trial and does not assert that the admission of the evidence constituted fundamental error.

where the defendant had failed to preserve the issue by failing to object and where there was no fundamental error).

Waiver notwithstanding, we conclude there is no error—fundamental or otherwise—because the specific facts before us support the conclusion that the evidence was properly seized pursuant to a search incident to arrest. The search incident to arrest exception to the warrant requirement provides that a police officer may conduct a search of "'the arrestee's person and the area within his immediate control.'" *Stark v. State*, 960 N.E.2d 887, 889 (Ind. Ct. App. 2012) (quoting *Chimel v. California*, 395 U.S. 752 (1969)), *trans. denied*. "Evidence resulting from a search incident to a lawful arrest is admissible at trial." *Gibson v. State*, 733 N.E.2d 945, 953 (Ind. Ct. App. 2000). An arrest is lawful if it is supported by probable cause. *VanPelt v. State*, 760 N.E.2d 218, 222 (Ind. Ct. App. 2001), *trans. denied*. "Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act." *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003).

Here, an eyewitness (the hotel employee) observed Rhodes breaking into cars in the hotel's parking lot in the early morning hours. This eyewitness immediately called police and provided them with a description of Rhodes—who was wearing a white t-shirt and dark jeans and carrying a case of Budlight—and told police that Rhodes was headed northbound near 25th Street when he left the hotel parking lot.[6] Within minutes of

---

[6] Rhodes asserts that he did not meet the description given by the eyewitness because he asserts that he was wearing brown pajama pants, not dark jeans, when he was stopped by police. Rhodes was the only

8

receiving radio dispatch of this suspect information, Officer Durham began to search the area near the hotel and encountered Rhodes in a home improvement store parking lot on 25th Street, which was "immediately adjacent" to the hotel parking lot. (Tr. 25). Thus, Rhodes matched the specific description of the suspect and was found close—both temporally and in proximity—to the scene of the crime. These specific facts and circumstances known to the officer provided probable cause to arrest Rhodes. *See, e.g.*, *Samaniego v. State*, 553 N.E.2d 120, 123 (Ind. 1990) (holding that police had probable cause to arrest defendant where he matched description given by witnesses and his truck was found near the scene of the crime); *Slaton v. State*, 510 N.E.2d 1343, 1349-50 (Ind. 1987) (holding that there was probable cause to arrest defendant where police officer immediately responded to a burglary call, had received dispatch description of suspect as a "large black male with a red windbreaker," and spotted defendant who matched that description); *Merritt v. State*, 488 N.E.2d 340, 342 (Ind. 1986) (finding that arresting police officer had probable cause to believe the defendant had committed crimes at issue where the officer knew the defendant matched the description given by the victims). Thus, the trial court did not err, let alone commit fundamental error, by admitting the cell phone and credit card into evidence. Accordingly, we affirm Rhodes's convictions.

Affirmed.

BARNES, J., and CRONE, J., concur.

---

person at trial to testify that he was wearing brown pajama pants. All other witnesses—including the eyewitness hotel employee and police—testified that Rhodes's pants were dark jeans.