**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 07 2014, 8:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRANDON E. MURPHY**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACK L. ANDERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 05A02-1402-CR-133 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-1303-FC-72

**November 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Jack L. Anderson appeals his convictions of burglary, a Class C felony, Indiana Code section 35-43-2-1 (1999), and theft, a Class D felony, Indiana Code section 35-43-4-2 (2009). We affirm.

## ISSUE

Anderson raises one issue, which we restate as: whether the trial court erred in admitting evidence resulting from his arrest.

## FACTS AND PROCEDURAL HISTORY[1]

In the early morning hours of March 3, 2013, Anderson and Daniel Meadows arrived at a property in Dunkirk, Blackford County. They were in Meadows' van, but Anderson drove them to the destination. They both wore black leather jackets and jeans.

Vinod Gupta owned the property, which consisted of a barn and a house, and neither he nor anyone else had given Anderson and Meadows permission to be there. No one was present when Anderson and Meadows arrived. Anderson went into the barn but came back out, saying he "didn't find what he needed." Tr. p. 48. Next, Anderson broke into a shed he referred to as a "well house," looking for brass fittings. *Id.* He came back empty-handed. Anderson then went to the house, forced open the front door, and went inside. Twenty minutes later, Anderson came outside and asked Meadows to help him gather up copper wiring.

---

[1] The statement of facts in Anderson's brief is largely a witness-by-witness summary of trial testimony, in violation of Indiana Appellate Rule 46(A)(6)(c).

2

Meadows went inside with Anderson, and the two climbed up into the attic. Meadows saw loose copper wire, and he watched Anderson tear another piece of wire off of the wall. He and Anderson gathered up wire until Meadows heard a car outside. They abandoned the wire, climbed down from the attic, and exited the house via a back window.

Anderson ran away, but Meadows went to the front of the house to retrieve his van. A man later identified as Larry Brown had parked his car behind Meadows' van and was waiting there. Meadows offered Brown $500 to let him leave, but Brown refused and called the police. Brown's vehicle blocked the driveway, so Meadows drove off through a field, leaving tracks. The van became stuck in mud, and Meadows left on foot.

Officer Scott Blakely and other officers arrived at the house at 5:40 a.m. *Id.* at 123. Blakely and the other officers followed the tracks through the mud to the van. No one was there, and a search of the area failed to reveal any suspects. Brown gave a statement to Blakely, including a description of the person he encountered.

Later, at around 8:30 a.m., Blakely and another officer were dispatched to investigate a reported sighting of an individual matching the description Brown had provided. *Id.* At a location that was a half of a mile from the burglarized house, Blakely saw a person, who was later identified as Anderson. Anderson matched the description of the suspect, including wearing a black leather jacket with a belt on the bottom edge. He also had mud "all over his jeans." *Id.* at 119.

Anderson crossed a road and approached a house. When Anderson saw the police, he ran up the steps to the front of the house. As Anderson moved closer to the house,

3

Blakely ordered him to stop. Anderson put his hands in his pockets, and he refused Blakely's command to remove them until Blakely drew his weapon. The officers approached Anderson, handcuffed him, and took him to jail. Blakely later learned that Anderson lived at the house where he had been arrested.

Meanwhile, Meadows hid in a wooded area until around noon. He left the woods and was walking along a road when Brown encountered him again and called the police as he followed him. Blakely and other officers arrived and took him into custody.

At the jail, an officer informed Anderson of his Miranda rights, and Anderson agreed to talk. He admitted his name and identity. Another officer continued the questioning, and Anderson admitted that he had been in the house with Meadows. Officers asked Brown to come to the jail to determine if Anderson was the person he saw at the scene of the burglary.

The State charged Anderson with burglary and theft. Anderson filed a motion to suppress all evidence gained as a result of his arrest, claiming Officer Blakely had no basis to detain him and had violated his federal and state constitutional protections against unreasonable search and seizure.

The trial court granted the motion in part and denied it in part. The court determined that the officers had reasonable suspicion to detain Anderson but determined that any statements Anderson made before being advised of his Miranda rights must be suppressed. The court also excluded all evidence related to Brown's interaction with Anderson at the jail.

4

The case was tried to a jury. Anderson did not appear, but trial was held in his absence. The jury determined that he was guilty as charged. The trial court sentenced him accordingly, and this appeal followed.

DISCUSSION AND DECISION

Anderson claims that the trial court erred by denying in part his motion to suppress evidence. Appellant's Br. p. 10. Specifically, he claims all evidence resulting from his arrest should have been suppressed because his arrest violated the Fourth Amendment to the United States Constitution.[2] Anderson is raising this claim after a completed trial, so it is more appropriately framed as whether the court erred in admitting the challenged evidence at trial. *See Atkinson v. State*, 992 N.E.2d 899, 901 (Ind. Ct. App. 2013), *trans. denied*.

The State argues that Anderson waived this claim for appellate review by failing to timely object at trial. After reviewing the transcript, we disagree and address the merits of Anderson's claim.

The Fourth Amendment requires that searches and seizures must be conducted pursuant to a warrant supported by probable cause unless a recognized exception to the warrant requirement is applicable. *State v. Schlechty*, 926 N.E.2d 1, 3 (Ind. 2010). The State bears the burden of establishing that a warrantless seizure fell within an exception

---

[2] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment is applicable to the states by way of the Due Process Clause of the Fourteenth Amendment. *Brooks v. State*, 934 N.E.2d 1234, 1240 (Ind. Ct. App. 2010), *trans. denied*.

to the warrant requirement. *Tuggle v. State*, 9 N.E.3d 726, 733 (Ind. Ct. App. 2014), *trans. denied*.

The parties' arguments focus on whether Blakely had reasonable suspicion to detain Anderson. The Fourth Amendment permits an officer to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity is occurring. *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014).

The standard of reasonable suspicion is inapplicable here. Upon encountering Anderson, the officers did not seek to briefly detain him or question him. Instead, once he saw them and ran toward a house, they stopped him at gunpoint, put him in handcuffs, and took him to jail. The encounter was thus in the nature of an arrest rather than an investigatory stop, and the appropriate inquiry is whether probable cause existed to support the warrantless arrest.[3]

Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act. *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003); Ind. Code § 35-33-1-1 (2011). The amount of evidence necessary to meet the probable cause requirement for a warrantless arrest is determined on a case-by-case basis. *Griffith*, 788 N.E.2d at 840. Further, the amount of evidence necessary for probable cause is grounded in the concept of common

---

[3] Anderson cites *State v. Atkins*, 834 N.E.2d 1028 (Ind. Ct. App. 2005), *trans. denied*, for the principle that Officer Blakely needed probable cause to detain him because he was on his own property. It is unnecessary to address this point because Blakely's interaction with Anderson amounted to a warrantless arrest rather than an investigative stop, regardless of where the interaction occurred.

6

sense, not mathematical precision. *Ware v. State*, 859 N.E.2d 708, 720 (Ind. Ct. App. 2007), *trans. denied*.

In this case, when Officer Blakely and a colleague were dispatched at 8:30 a.m. to investigate a reported sighting of a suspect, he: (1) knew a house had been burgled earlier that morning; (2) had a description of the alleged burglar, provided by Brown; and (3) knew the suspect was possibly on foot, having abandoned a van in a muddy field.

When Blakely arrived, he saw Anderson walking across a road toward a house. Anderson was only a half of a mile from the scene of the burglary. In addition, Anderson closely matched the description of the suspect that Blakely had been given. Anderson wore a black leather jacket with a belt along the bottom edge, and his jeans were muddy. Anderson walked toward a house until he saw the officers, at which time he began running toward the front door.

These circumstances, taken together, would warrant a person of reasonable caution to believe that Anderson had participated in the burglary. *See Samaniego v. State*, 553 N.E.2d 120, 123 (Ind. 1990) (probable cause to arrest for burglary where defendant matched eyewitnesses' descriptions and defendant's truck was found near the crime scene); *Rhodes v. State*, 996 N.E.2d 450, 455 (Ind. Ct. App. 2013) (probable cause to arrest for theft where defendant matched an eyewitness's description and officers found defendant close in time and location to the crime scene).

The trial court did not err in admitting evidence obtained as a result of the arrest.

<u>CONCLUSION</u>

For the reasons stated above, we affirm the judgment of the trial court.

7

Affirmed.

NAJAM, J., and CRONE, J., concur.