Ray OGLE, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 19S00–9610–CR–00640.

Supreme Court of Indiana.

July 29, 1998.

Steven E. Ripstra, Lytton & Ripstra, Jasper, for Defendant–Appellant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant, Ray Oglè, appeals from his convictions and sentence for the August 25, 1995, murder[1] and robbery[2] of Dennis Coble. The jury returned a verdict of guilty

---

1. IND CODE § 35–42–1–1 (1993).

2. IND CODE § 35–42–5–1 (1993).

but was unable to recommend whether the defendant should receive life imprisonment without parole. The trial court then sentenced the defendant to 115 years in prison by enhancing the murder sentence by 10 years, from 55 years to 65 years, enhancing the robbery conviction by 20 years, from 30 to 50 years, and ordering that they be served consecutively.

The claims presented relate to six issues: (1) probable cause for arrest; (2) advisement of rights during questioning; (3) sufficiency of evidence; (4) admissibility of witness credibility evidence; (5) availability of sentence to life imprisonment without parole; and (6) propriety and reasonableness of sentence.

### Probable Cause for Arrest

■ The defendant claims that the police lacked probable cause to arrest him and that any evidence or statements obtained pursuant to that arrest should therefore have been suppressed. The defendant filed a motion to suppress, which the trial court denied, and the defendant reiterated his objection at trial. In reviewing the trial court's decision, we consider the evidence favorable to the trial court's ruling and any uncontradicted substantial evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Vance v. State,* 620 N.E.2d 687, 691 (Ind.1993).

■ Probable cause exists when the officer, at the time of arrest, has knowledge of facts and circumstances which would warrant a reasonable person to believe that the defendant committed the crime. *Sears v. State,* 668 N.E.2d 662, 667 (Ind.1996). The determination of probable cause is not one of mathematical precision, but rather is grounded on notions of common-sense. *Illinois v. Gates,* 462 U.S. 213, 235–36, 103 S.Ct. 2317, 2330–31, 76 L.Ed.2d 527, 546 (1983). The quantum of evidence necessary for probable cause is determined on a case-by-case basis. *Peterson v. State,* 674 N.E.2d 528, 536 (Ind. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 858, 139 L.E.2d 757 (1998).

■ Officer Richard Chambers testified at the hearing on the motion to suppress. According to his testimony, shortly after police discovered the victim's body at a Jasper up-holstery factory, a local bartender reported that the defendant had been in the establishment that night with another man, that the defendant had various cuts and scrapes on his face and hands, and that the defendant stated that he had been in a fight. Officer Chambers knew that the victim had filed a criminal complaint a few days earlier against the defendant for theft, although that case was still under investigation and had not yet been resolved. The police, including Officer Chambers, went to the defendant's residence, found no one present, but subsequently learned that Gary Chamberlain was the man who was with the defendant at the bar. The police went to Chamberlain's last known address. Upon arriving at the apartment, Chamberlain gave the police consent to enter and the police discovered the defendant standing in a closet, holding what appeared to be either a knife or pair of scissors. They ordered him to drop what he was holding and then arrested him.

The prior history between the two men, the presence of cuts and scrapes on the defendant's hands and face in close temporal and spatial proximity to the death of the victim, the defendant's admission of being in a fight, and his hiding from police with a weapon, combined together, constituted probable cause which would support a warrantless arrest.

### Advisement of Rights During Questioning

The defendant was brought into the police station for questioning. He was advised, and signed a waiver, of his *Miranda* rights at the time the police started questioning. After some questioning, the police stopped the interrogation to investigate part of the defendant's story. When the questioning resumed less than an hour later, the police did not advise the defendant a second time of his *Miranda* rights. The defendant filed a motion to suppress his statements during the second questioning, which the trial court denied, and the defendant reasserted the same objection at trial.

■ The defendant contends that his second statement should have been suppressed because he should have received a second warning. We disagree. In reviewing

a trial court's denial of a motion to suppress statements made by the defendant, we do not reweigh the evidence but only consider the conflicting evidence favorable to the trial court's ruling and any uncontroverted substantial evidence to determine whether there is sufficient evidence to support the ruling. *Buie v. State*, 633 N.E.2d 250, 256 (Ind.1994). Here it is clear that police acted in accordance with the dictates of *Miranda v. Arizona*, 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694, 721 (1966), which requires law enforcement officials to give those in custodial interrogation an advisement of certain constitutional rights. Although it might be the better practice to reiterate such warnings after an interruption of questioning, *see Grimes v. State*, 454 N.E.2d 388, 391 (Ind. 1983), a readvisement is only necessary when the interruption deprived the suspect of an opportunity to make an informed and intelligent assessment of his interests. *Heavrin v. State*, 675 N.E.2d 1075, 1081–82 (Ind.1996); *Shane v. State*, 615 N.E.2d 425, 427 (Ind. 1993). If the interruption is part of a continual effort to investigate the suspect, then the suspect's interests remain fairly clear. *Shane*, 615 N.E.2d at 427.

The undisputed evidence shows that the interruption in the interrogation was "part of a continual effort by the police to gather information," *id.*, and, thus, the trial court properly denied the defendant's motion to suppress his statements made during the second interview.

### Sufficiency of the Evidence

The defendant contends that the evidence was insufficient to support his convictions for murder and robbery. The defendant argues that, because the only evidence against him was circumstantial, we must evaluate whether the State disproved every reasonable theory of innocence. While a defendant may be entitled to a jury instruction to this effect, this standard is not applicable to appellate review for sufficiency of evidence. *Myers v. State*, 532 N.E.2d 1158, 1159 (Ind.1989). An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State*, 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State*, 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. To establish that a murder occurred, the State charged alternatively that the defendant knowingly or intentionally killed the victim and that the defendant killed the victim in the commission of a robbery. IND. CODE § 35–42–1–1 (1993). For robbery, the State charged that the defendant knowingly or intentionally took the property of the victim by the use of force which resulted in serious bodily injury to the victim. IND. CODE § 35–42–5–1 (1993).

The facts favorable to the judgment reveal that, at around 4:00 p.m. on the day of the crime, the defendant talked with a woman about going to the movies but stated that he had only a few dollars, not enough to pay for a movie. At 7:00 p.m. that evening, the defendant, wearing a multi-colored shirt, got into the victim's cab, a tan Chevrolet Cavalier with a sign on the top. At around 7:25, a tan car of the same type as the cab with a sign on top was seen driving into a salvage yard from the direction of an upholstery plant. Around a half an hour later, the defendant was seen running along the railroad tracks from the salvage yard toward Jasper with chains hanging out of his pocket. The defendant went to the boarding house where he was staying, showered, changed clothes, and packed his belongings into two bags, which he then left outside the boarding house in the alley.

The defendant went to a gas station convenience store, bought cigarettes, a newspaper, and a large soda. He waited around a little while and then purchased white adhesive tape which he used to bandage his fingers. The cashier also noticed a cut on his face. The defendant told the cashier that he had been in "one hell of a fight." Record at 1890.

Later the defendant went to Gary Chamberlain's apartment and asked Chamberlain if he could stay there. Chamberlain noticed that the defendant seemed nervous and "jittery," Record at 1863, and that the defendant

had cuts on his face and hands. When Chamberlain asked what happened, the defendant responded that he had been in a fight. The two men left to buy alcohol and the defendant paid with a twenty dollar bill. The men also picked up the defendant's two bags behind the boarding house. Upon returning to the apartment, the defendant told Chamberlain that he had cut the throats of two people.[3] After 1:30 a.m., the woman to whom the defendant had talked regarding attending a movie appeared at Chamberlain's apartment. The defendant told her that he had been in a fight and that the police were probably looking for him.

At around 10:00 p.m. the victim's body was discovered in the parking lot of the upholstery plant. His throat had been slit and his chest was crushed. The victim's wallet, which had been connected to his belt with a chain, was missing. Upon investigation, the police decided to question the defendant and found him at Chamberlain's apartment, hiding in the closet. He had $58.87 in his possession and a bloody multi-colored shirt was found in one of his bags. Police questioned the defendant, who stated that the cuts and scrapes on his hands and face resulted from a fight with his girlfriend's stepfather, Dennis Dailey. Three witnesses, including Dailey, told police that, although Dailey had seen and talked to the defendant that day, there was no physical contact between the two men. The victim's cab was later found in the salvage yard.

The defendant admitted that he had been in the victim's cab that day, but stated that he had only been in the rear seat. However, a blood stain inside the car on the driver's side front door was consistent with the defendant's blood and inconsistent with the victim's blood. The defendant's fingerprints were on the outside of the driver's side front door. Further, there was evidence of a struggle with the assailant because the victim had several long, red hairs in his hand and testimony established that the defendant had long, red hair at the time, whereas the victim had short, red hair.

■ Although the evidence that the defendant committed murder and robbery is circumstantial, a defendant may be convicted on wholly circumstantial evidence. *Green v. State*, 587 N.E.2d 1314, 1315 (Ind.1992). Here the evidence showed that the defendant was the last person known to have been in the victim's cab, that he was seen in the vicinity of the crime shortly thereafter, and that he had over $50.00 later in the evening when he had earlier stated he did not have enough to go to a movie. There was evidence that the victim had engaged in a struggle with his assailant, who had long, red hair, as did the defendant. The victim's wallet, which was attached by a chain, was missing and the defendant was seen after leaving the vicinity of the crime with chains hanging out of his pockets. The defendant admitted having been in the victim's cab, and the defendant's fingerprints were found on or in the front of the cab, as were blood stains consistent with the defendant's blood type and inconsistent with the victim's blood type. The defendant was seen wearing a multicolored shirt when he entered the victim's cab, and later a multi-colored shirt with blood on it was found in one of the defendant's bags. Additionally, the defendant told his friend that he had cut the throats of two people, and the victim died from a slit throat. The defendant acknowledged that he had been in a fight and that the police would probably be looking for him.

This evidence was sufficient to enable a reasonable jury to find beyond a reasonable doubt that the defendant intentionally killed the victim during the course of a robbery and that he stole the victim's money by the use or threat of force.

### Credibility Evidence

■ The State offered the testimony of Dennis Dailey, the step-father of the defendant's ex-girlfriend, at trial to show that he had not been engaged in a fight with the defendant the day of the crime as the defendant told police. The defendant wished to introduce a full record of Dailey's previous convictions, but the trial court ordered that the sentencing and commitment order be

---

**3.** The defendant referred to them as his mother and father-in-law. Record at 1864. However, only one body was found and that victim, Coble, was not related to the defendant in any way.

redacted to eliminate mention of his specific offenses. The defendant now contends that the evidence should have been admitted because it went to Dailey's motive for bias or prejudice, as an arrest for battery could have resulted in a revocation of Dailey's probation. The defendant does not show how he was harmed by the redaction of the sentencing and commitment order. Indiana Evidence Rules provide that, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Ind. Evidence Rule 103(a). At trial, the defendant was allowed to cross-examine the community corrections director for the county and present to the jury the fact that Dailey's probation could be revoked for fighting. Thus, the jury properly heard other evidence of the bias or prejudice upon which the defendant now predicates error. The defendant's substantial rights have not been adversely affected.

■ Additionally, the defendant claims that "character evidence indicating a propensity for violence may be admissible where the witness's violent character is relevant." Brief of Appellant at 17. However, a defendant may not state one ground at trial and another on appeal; any such claim is waived. *Bradford v. State,* 675 N.E.2d 296, 302–03 (Ind.1996) (citing *Jester v. State,* 551 N.E.2d 840, 843 (Ind.1990)). At trial, the defendant merely stated that the other convictions went beyond impeachment because they pertained to "the substantive evidence in the case." Record at 2469. Because the defendant did not propose the evidence on the basis that it was character evidence indicating a propensity for violence, he has waived this claim.

### Life Imprisonment

The defendant contends that the State's request for a sentence of life imprisonment violated the Equal Protection and Due Process Clauses of the United States Constitution. However, the defendant did not receive a sentence of life imprisonment. Because the defendant has not suffered any injury, we need not address the merits of his claim. *Hall v. State,* 493 N.E.2d 433, 434 n. 1 (Ind. 1986).

### Sentence

■ The defendant claims that it was error for the trial court to use the same aggravators to both enhance the defendant's sentences and also to run the sentences consecutively instead of concurrently. We have held that it is constitutionally and statutorily permissible for the trial court to use the same factors to both enhance a sentence and impose a consecutive sentence. *Johnson v. State,* 687 N.E.2d 345, 348 (Ind.1997); *Beatty v. State,* 567 N.E.2d 1134, 1137 (Ind.1991). Thus, it was not erroneous for the trial court to use the aggravators for both purposes.

■ The defendant also contends that his sentence was manifestly unreasonable. Indiana Appellate Rules state that a sentence will only be revised "where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender ." Ind. Appellate Rule 17(B). This is pursuant to our constitutional authority to review and revise sentences. IND. CONST. art. 7, § 4. Manifest has been defined as that which is clearly apparent, obvious, or readily perceived. *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997), *pet. for cert. filed,* (May 26, 1998)(No. 97–9215). In imposing the enhanced and consecutive sentences, the trial court relied upon the defendant's history of delinquent behavior in Kentucky, which included terroristic threats made against his own family, a teacher, and caseworkers in the juvenile court system in Kentucky; carrying a concealed deadly weapon; sexual assault; wanton endangerment; and harassing communications. Additionally we note that, in the present case, the defendant committed murder by slitting the victim's throat and crushing his chest in the course of a robbery. In light of these facts, his sentence does not clearly appear to be unreasonable.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.