ATTORNEYS FOR APPELLANT
Peter D. Todd
Elkhart, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
James B. Martin
Kelly A. Miklos
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Mar 25 2014, 12:30 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 20S04-1307-CR-471

JOANNA S. ROBINSON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Elkhart Superior Court, No. 20D05-1110-CM-507
The Honorable Charles Carter Wicks, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 20A04-1209-CR-561

**March 25, 2014**

**Massa, Justice.**

As the two companion appeals we resolve today vividly illustrate, sometimes standards of review decide cases.[1] In the instant case, the trial court found law enforcement had reasonable suspicion to conduct a traffic stop and admitted the resulting evidence; in State v. Keck, No. 67S01-1403-CR-179 (Ind. Mar. 25, 2014), the trial court reached the opposite conclusion. We affirm both trial courts and decline appellants' invitation to invade the fact-finder's province.

**Facts and Procedural History**

Around 1:00 a.m. on October 15, 2011, Deputy Casey Claeys of the Elkhart County Sheriff's Department was following another vehicle down County Road 4. Deputy Claeys later testified he saw the vehicle "drive off the right side, which was the south side of the road, twice." Tr. at 24. Immediately after the second incident, he turned on his vehicle camera and initiated a traffic stop for "unsafe lane movement." Tr. at 24. The camera, once activated, retroactively records the previous thirty seconds.

Deputy Claeys later testified that when he approached the vehicle, he noticed the driver, Joanna S. Robinson, "had glossy, blood shot eyes, slurred speech . . . and the odor of an alcoholic beverage coming from her breath." Tr. at 26. Upon questioning, Robinson admitted

---

[1] Scholars and judges alike have acknowledged this power. See, e.g., Gerlach v. Woodke, 881 N.E.2d 1006, 1009 n.1 (Ind. Ct. App. 2008) ("although the standard of review is not outcome-determinative in this case, it often is in a significant number of cases."); Michael R. Bosse, Standards of Review: The Meaning of Words, 49 Me. L. Rev. 367, 398 (1997) ("Properly argued and decided, the standard of review may control the outcome of a case.").

she had drunk one beer, and Deputy Claeys proceeded to conduct standard field sobriety tests on her. After she failed three of the tests, Robinson told Deputy Claeys she had marijuana concealed in her clothing; she then removed the marijuana and dropped it onto the ground. At that point, Deputy Claeys took Robinson into custody and transported her to the Elkhart County Jail, where a chemical test showed her blood-alcohol level was 0.09.

The Elkhart County Prosecutor charged Robinson with three Class A misdemeanors (operating a motor vehicle with a suspended license,[2] possession of marijuana,[3] and operating a vehicle while intoxicated[4]) and one Class C misdemeanor (operating with a breath-alcohol level over 0.08[5]). By counsel, Robinson moved to suppress all the evidence against her, arguing Deputy Claeys did not have reasonable suspicion to justify the stop because Robinson "never left her lane of traffic in any form." App. at 23. Pursuant to the parties' agreement, the trial court considered Robinson's motion in conjunction with the evidence presented at her bench trial, which included Deputy Claeys's testimony, blood and breath test evidence, and the video from the camera on Deputy Claeys's vehicle. The trial court also heard final argument from both parties; the State encouraged the court to credit Deputy Claeys's testimony over the videotape, while the defendant urged the opposite.

Ultimately, the trial court denied Robinson's motion to suppress. Citing State v. McCaa, 963 N.E.2d 24, 31 (Ind. Ct. App. 2012) (finding reasonable suspicion for a traffic stop when the defendant drove "slowly and off of the roadway twice"), the trial court stated it "reviewed the video on approximately ten occasions and cannot conclude from the video that the defendant's vehicle actually left the roadway . . . but it does show the vehicle veering on two occasions onto

---

[2] Ind. Code § 9-24-19-2 (2010 & Supp. 2013).

[3] Ind. Code § 35-48-4-11(1) (2008 & Supp. 2013).

[4] Ind. Code § 9-30-5-2(b) (2010).

[5] Ind. Code § 9-30-5-1(a)(2) (2010).

3

the white fog line." App. at 33. The trial court noted, however, that it was "quite possible that the officer's actual visual observation of the defendant's vehicle was superior to the video camera in his car." App. at 33. After considering all of this evidence, the trial court concluded this case was "perhaps a closer call" than McCaa, but that "the act of weaving onto the fog line, while not itself an illegal act, did give a trained police officer justification to stop and inquire further as to the driver's condition." App. at 33, 34. The trial court then found Robinson guilty of possession of marijuana, operating while intoxicated, and operating with a breath-alcohol level over 0.08. It merged the latter two convictions and sentenced her to one year of imprisonment for each conviction, to run concurrently and suspended to probation.

Robinson appealed, arguing the trial court wrongly denied her motion to suppress. A panel of our Court of Appeals agreed and reversed her conviction. Robinson v. State, 985 N.E.2d 1141, 1148 (Ind. Ct. App. 2013).

We granted transfer, thereby vacating the opinion below. Robinson v. State, 990 N.E.2d 945 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

## Standard of Review

Our justice system entrusts the admission of evidence to the trial court's sound discretion. Schmitt v. State, 730 N.E.2d 147, 148 (Ind. 2000). We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant. Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006) (citing Murphy v. State, 747 N.E.2d 557, 559 (Ind. 2001); Ogle v. State, 698 N.E.2d 1146, 1148–49 (Ind. 1998)). We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence. Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008) (citing State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006)). When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of

4

law, and we address that question de novo.  Id. (citing Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005)).

**The Trial Court Correctly Denied Robinson's Motion to Suppress**

Robinson argues Deputy Claeys lacked reasonable suspicion to stop her vehicle and thus violated her rights under both the federal and state constitutions.[6]  As a threshold matter, both parties dispute the significance of the video evidence.  Robinson notes the trial court conceded the video "did not clearly demonstrate that Robinson's vehicle veered off the roadway . . . but speculated that the officer's observations at the scene were superior to his in-car camera." Appellant's Br. at 2.  The State, on the other hand, cautions us not to "rest [our] determination on minutia of an imperfect and rudimentary video."  Appellee's Br. at 8.

While technology marches on, the appellate standard of review remains constant.  As we said above, we do not reweigh the evidence.  Our colleagues in other states have taken a similar approach when faced with video evidence.  State v. Vanscoyk, No. A-12-024, 2012 WL 6580786 at *6 (Neb. Ct. App. Dec. 18, 2012) ("Vanscoyk essentially asks us to reweigh evidence and witness credibility to determine whether Officer Kowalewski's testimony is credible in light of the video.  This is not the appropriate province of an appellate court."); State v. Gross, No. 107320, 2012 WL 3136809 at *4 (Kan. Ct. App. July 27, 2012) ("We do not reweigh the

---

[6] Robinson's Motion to Suppress alleged violations "of defendant's rights secured by the Constitution of the United States, under 4th, 5th, 6th and 14th Amendments and under the Article 1 Section 1 of the Indiana Constitution."  App. at 23.  Based on Robinson's appellate brief, which cites Terry v. Ohio, 392 U.S. 1, 30 (1968) and Barrett v. State, 837 N.E.2d 1022, 1026 (Ind. Ct. App. 2005), we understand Robinson's arguments to be predicated upon the federal Fourth Amendment, incorporated to the States by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 660 (1961), and upon Article 1, § 11 of our own Indiana Constitution.  To the extent that Robinson intended to make other arguments on appeal, she has not adequately developed them and thus waived them for our review.  Ind. Appellate Rule 46(A)(8)(a); City of Indianapolis v. Buschman, 988 N.E.2d 791, 795 (Ind. 2013) (citing Reed v. Reid, 980 N.E.2d 277, 297 (Ind. 2012)).

evidence, and the district court's conclusion that the video was 'the clearest evidence' is not contrary to any uncontested testimony."); State v. White, No. E2010-02238-CCA-R3CD, 2011 WL 5335471 (Tenn. Crim. App. Nov. 2, 2011) (declining, in a challenge to the sufficiency of the evidence for a conviction for drunk driving, to reweigh the evidence and find a video recording more reliable than eyewitness testimony).[7]

We do not believe, however, as some of our colleagues in other jurisdictions do, that the very act of *reviewing* video evidence constitutes impermissible appellate reweighing. State v. Rascon, No. 30,561, 2011 WL 704472 at *2 (N.M. Ct. App. Jan. 14, 2011) cert. denied, 2011-NMCERT-003, 150 N.M. 619, 264 P.3d 520 (2011) (table) (declining even to review a video of a traffic stop in a reasonable suspicion case on the ground that doing so would amount to reweighing the evidence). Rather, we consider video evidence admitted in the trial court to be a necessary part of the record on appeal, just like any other type of evidence. But see Nava v. Kan. Dep't of Revenue, 281 P.3d 597 (Kan. Ct. App. 2012) (table), 2012 WL 3135902 at *4 ("the Department asks us to reweigh not only the witness[es]' testimony but also the district court's factual determination regarding the video evidence without having even included a copy of the video in the record on appeal.").

And just like any other type of evidence, video is subject to conflicting interpretations. In Scott v. Harris, 550 U.S. 372 (2007), Justice Scalia, writing for the majority of the Court, described a videotape as showing "a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." Id. at 380. Based largely on his impression of that video, he concluded police were justified in using deadly

---

[7] These cases are unpublished, and their citation is either disfavored, disallowed, or restricted by their respective jurisdictions. Neb. Ct. R. App. P. § 2-102(E)(4); Kan. Sup. Ct. R. 7.04(g)(2)(B); Tenn. Ct. Crim. App. R. 19(4). But as we have done before when faced with a specific and narrow issue arising out of the novel application of technology, see, e.g., Troxell v. State, 778 N.E.2d 811, 816 (Ind. 2002) (citing unpublished decision Fanniel v. State, No. 01-00-00732-CR, 2002 WL 467158 at *1 (Tex. Crim. App. Mar. 28, 2002)), we cite them to show that our approach to that issue is consistent with the approach of our colleagues in other jurisdictions.

force to end the pursuit.  Id. at 386.  Justice Stevens, dissenting, described the very same video as "hardly the stuff of Hollywood" and opined it did not show "any incidents that could even be remotely characterized as 'close calls.'"  Id. at 392 (Stevens, J., dissenting).

What is more, "the video record may 'speak for itself,' but it does not and cannot speak for the visual input a judge observes and interprets that falls outside the scope of the camera, nor does it filter events and behavior through his or her experience and expertise."  Bernadette Mary Donovan, Note, Deference in A Digital Age:  The Video Record and Appellate Review, 96 Va. L. Rev. 643, 676 (2010).  Although this statement was made in the context of a discussion of appellate consideration of video trial transcripts, we believe the same reasoning applies to appellate consideration of video evidence, and even to law enforcement reaction to an evolving situation.  Deputy Claeys, as he drove down County Road 4 on that October night, was observing Robinson's vehicle through the lens of his experience and expertise.  And when Deputy Claeys testified at the suppression hearing, the trial judge heard his testimony—along with the other witness testimony and evidence, including the video—through the lens of *his* experience and expertise.  Ultimately, that experience and expertise led the trial judge to weigh Deputy Claeys's testimony more heavily than the video evidence, and we decline Robinson's invitation to substitute our own judgment for that of the trial court and rebalance the scales in her favor.

The trial court found, as a matter of fact, that to the extent Deputy Claeys's testimony conflicted with the video, the former was more reliable than the latter.[8]  Deputy Claeys testified "both passenger side tires were over the fog line" and "completely off the roadway" "twice."  Tr.

---

[8] The dissent asserts that the trial court based its ruling on a factual conclusion that Robinson "swerve[ed] toward" or "weav[ed] onto" the white fog line, App. at 33–34, rather than "over the fog line."  Tr. at 48. That is not how we read the trial court's conclusions, but even if it were, affirmance would still be proper. "On appellate review, . . . a trial court judgment may be affirmed if sustainable on any basis in the record, even though not on a theory used by the trial court."  Benham v. State, 637 N.E.2d 133, 138 (Ind. 1994) (citing Havert v. Caldwell, 452 N.E.2d 154, 157 (Ind. 1983)).  Here, the officer's testimony that Robinson crossed the fog line twice—which the trial court appeared to find credible—supports a legal finding of reasonable suspicion for the traffic stop.  Thus, we may—and do—affirm the trial court.

at 48, 24.  Thus, we must now decide whether those facts constitute reasonable suspicion for a traffic stop, as a matter of law, in accordance with our federal and state constitutions.

## I.      The Fourth Amendment

The Fourth Amendment provides protection against unreasonable searches and seizures by generally prohibiting such acts without a warrant supported by probable cause.   U.S. Const. amend. IV; Clark v. State, 994 N.E.2d 252, 260 (Ind. 2013).  The Terry stop, perhaps the most popular exception to this rule, permits an officer to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Such a stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."   Armfield v. State, 918 N.E.2d 316, 319 (Ind. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

Both Robinson and the State rely heavily on Barrett v. State, 837 N.E.2d 1022 (Ind. Ct. App. 2005), in which police received a tip that two persons driving a blue Chevrolet Geo Tracker had purchased methamphetamine ingredients at a Meijer store.  Id. at 1024.  Officers located that vehicle in the store parking lot and followed it out onto the interstate, where they observed it drift to the right and travel on the fog line for about forty yards.  Id. at 1025.  A divided panel of our Court of Appeals found reasonable suspicion to support the stop.  Id. at 1028.  Robinson argues Barrett was wrongly decided and urges us to adopt the reasoning Judge Mathias expressed in his dissent.  Id. at 1031 (Mathias, J., dissenting) (suggesting that if simply drifting in a lane of traffic provided probable cause for a stop, the reasonable suspicion standard would be so low as to be almost meaningless).   In the alternative, Robinson argues this case is distinguishable from Barrett.  The State, on the other hand, asserts Barrett and other cases have established that an officer who observes a vehicle drive onto the fog line multiple times has reasonable suspicion to stop that vehicle on the ground that the driver is likely impaired.  McCaa, 963 N.E.2d at 31 (finding reasonable suspicion to conduct a traffic stop when the officer had received several reports that a semi was driving erratically and observed the semi travel under the speed limit and

cross the fog line twice); Jaremczuk v. State, 177 Ind. App. 628, 629–31, 380 N.E.2d 615, 616–17 (1978) (finding reasonable suspicion to conduct a traffic stop when officers received a tip that a particular vehicle was involved in a hit-and-run and then observed a vehicle matching that description cross the fog line).

Robinson is correct, of course, that unlike in Barrett and McCaa, there was no "tip" in this case to corroborate Deputy Claeys's observation that her driving appeared erratic. Even so, we do not believe the Fourth Amendment requires police "to grant drunk drivers 'one free swerve' before they can legally be pulled over." Virginia v. Harris, 130 S. Ct. 10, 12 (2009) (Roberts, C.J., dissenting from denial of certiorari). Even if it did, Robinson swerved *twice* on a relatively straight, flat roadway. Although such movement could have been attributable to driver distraction or some other more innocuous cause, Terry does not require absolute certainty of illegal activity, but rather reasonable suspicion. On these facts, we find that standard was satisfied.

## II.     Indiana Constitution Article 1, § 11

Although its text mirrors the federal Fourth Amendment, we interpret Article 1, § 11 of our Indiana Constitution separately and independently. State v. Washington, 898 N.E.2d 1200, 1205–06 (Ind. 2008). When a defendant raises a Section 11 claim, the State must show the police conduct "was reasonable under the totality of the circumstances." Id. We consider three factors when evaluating reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

Deputy Claeys witnessed Robinson drive over the fog line twice in a relatively short period of time, giving rise to a reasonable suspicion that she was impaired. The initial intrusion—a Terry stop—was relatively minor, and Deputy Claeys only escalated the stop after he noticed several signs that Robinson was in fact intoxicated. And few Hoosiers would dispute the heartbreaking effects of drunk driving in our state. Since 2008, Indiana has seen a 10%

annual increase in the number of victims of alcohol-impaired driving accidents. Samuel Nunn, Traffic Safety Facts: Alcohol, 2012, 13-C08 Ind. U. Center Crim. Just. Res. 1, 1 (June 2013), available at http://www.in.gov/cji/files/T-Alcohol.pdf. Last year, 158 Hoosiers lost their lives in crashes involving alcohol-impaired drivers. Id. Law enforcement has a strong interest in preventing these accidents, and "police should have every legitimate tool at their disposal for getting drunk drivers off the road." Harris, 558 U.S. at 978 (Roberts, C.J., dissenting from denial of certiorari). Thus, under the totality of the circumstances, we find Deputy Claeys's conduct was reasonable and the stop did not offend Article 1, § 11 of our Indiana Constitution.

## Conclusion

We therefore affirm the trial court's denial of Robinson's motion to suppress.


Dickson, C.J., and David and Rush, JJ., concur.
Rucker, J., dissents with separate opinion.

**Rucker, J., dissenting.**

In a compelling and persuasive opinion the Court of Appeals determined that evidence seized after a traffic stop should not have been admitted into evidence. The majority takes issue with this determination. But in my view the Court of Appeals got it exactly right.

The majority declares that the trial court "weigh[ed] Deputy Claeys's testimony [that Robinson drove off the roadway] more heavily than the video evidence." Slip op. at 7. Indeed, it would have been entirely within the trial court's province to do so; and had it done so that would be the end of the matter. But the record reflects that instead of choosing to credit the officer's testimony, the trial court concluded that reasonable suspicion was present based solely on Robinson's "act of weaving onto the fog line." App. at 34.

The trial court summarized the evidence presented, observing that "the officer in this case has testified that defendant drove off the roadway on two occasions." App. at 33. The court further acknowledged that "[i]t is quite possible that the officer's actual visual observation of the defendant's vehicle was superior to the video camera in his car." App. at 33. But the court recognized that the video did not reflect that the vehicle "actually left the roadway" but only that it "veer[ed] on two occasions onto the white fog line." App. at 33.

Based on the evidence the trial court then concluded:

> [T]he act of *swerving toward* the white fog line rather than maintaining the vehicle in a steady course in the middle of the lane as [Robinson] was driving through the rest of the journey would appear to justify a brief investigatory stop to see if the driver was in an impaired condition. Such driving of course could have been innocent such as a driver who dropped an item in the car or who was adjusting a radio or talking on a cell phone, but the fact that she swerved to the right on two occasions appears to be enough under the standard of Terry to justify the stop. The court in McCaa, indicates that leaving the roadway on more than one occasion would justify a stop. Having weighed the evidence, the

> court finds that the act of *weaving onto* the fog line, while not itself an illegal act, did give a trained police officer justification to stop and inquire further as to the driver's condition. The court therefore denies the Motion to Suppress the evidence of the traffic stop and the events flowing therefrom.

App. 33–34 (emphasis added).

The trial court's order thus makes plain the basis on which it found reasonable suspicion, namely: Robinson's acts of making contact with the fog line. I agree with the Court of Appeals that more is required. Sustaining the trial court's finding of reasonable suspicion on the basis that the court could have credited the officer's testimony that Robinson drove "[c]ompletely off the roadway," Tr. at 48, amounts to reweighing the evidence, which we are not permitted to do.[9]

The Court of Appeals reviewed numerous cases from other jurisdictions as well as prior Indiana precedent, all of which support the proposition that mere "brief contact with the fog line or swerving within a lane"—without more—is ordinarily insufficient to establish reasonable suspicion of impaired driving. Robinson v. State, 985 N.E.2d 1141, 1146 (Ind. Ct. App 2013), vacated. I agree and would reiterate the observation that "if failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." Id. (quoting United States v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993), overruled on other grounds by United States v. Botero-Ospina, 71 F.3d 783, 786–87 (10th Cir. 1995)). Therefore I respectfully dissent.

---

[9] The majority affirms the trial court relying in part on the longstanding rule that it may do so where evidence of record supports the judgment. See slip op. at 8 n.8 (citing Benham v. State, 637 N.E.2d 133, 138 (Ind. 1994)). Although an appellate court has permission to affirm on any basis in the record, I would be particularly reluctant to do so here based on record evidence that the trial court itself did not appear to credit.