**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LARRY LOVE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1311-CR-553 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William Nelson, Judge
The Honorable David Hooper, Commissioner
Cause No. 49F18-1110-FD-75242

**August 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Larry Love appeals the denial of his motion to suppress. We affirm.

## Issue

We address one dispositive issue, which we state as whether the trial court properly denied Love's motion to suppress because a show-up identification was not unduly suggestive.

## Facts

At around 6:00 p.m. on October 20, 2011, Eric Brock was driving home from work in Indianapolis when he noticed a red car following him. Brock stopped to get gas, and the driver of the red car stopped behind him at the gas station and waited for Brock to get gas. Because Brock was concerned about being followed, he did not look back at the driver of the red car. After Brock left the gas station, he stopped to make a left turn and was rear ended by the red car.

Brock got out of his car and walked back to the open driver's side of the red car and stood about a foot from the open door. Brock saw that the airbag had deployed and the driver was trying to push it down. No one else was in the car. Brock asked the driver if he was okay, and the driver swore at Brock. Brock asked the driver if he was okay a second time and got the same response. The driver then pushed the airbag down, closed the door, and drove away. The exchange between the driver and Brock lasted from thirty seconds to one minute. Brock called 911 and gave the dispatcher the license plate number of the red car.

While an off-duty officer responded to scene of the accident, Officer Curt Collins of the Indianapolis Metropolitan Police Department went to a nearby residence on Bancroft Street because another police officer had been flagged down by another witness and asked to follow a red car that was involved in a hit and run accident. When Officer Collins arrived at the Bancroft Street residence, a red car with front end damage was there. Officer Collins left the Bancroft Street residence and went to the scene of the accident.

Officer Collins asked Brock if he would recognize the driver of the red car, and Brock said he would. Officer Collins informed Brock that he thought they had the driver in custody at a nearby residence. Brock rode along with Officer Collins to identify the driver. As they approached the residence, Love and another man were standing with two or three uniformed police officers. There was at least one marked squad car at the residence. Before Officer Collins stopped his cruiser, Brock volunteered "that's him."[1] Tr. p. 30. When they got closer, Officer Collins pointed at Love and asked if he was the driver, and Brock reaffirmed that Love was the driver of the car. Love was wearing the same clothes Brock remembered him wearing.

The State charged Love with Class D felony operating a motor vehicle as an habitual traffic violator, Class A misdemeanor operating while intoxicated, Class C misdemeanor operation with a BAC between .08 and .15, and Class C misdemeanor

---

[1] Love makes much of the fact that at the suppression hearing Brock was questioned about his previous deposition testimony in which he indicated he was "pretty sure" Love was the driver before the officer pointed to him and asked if it was him. Tr. p. 26. At the suppression hearing, Brock testified that he was able to identify Love as soon as he saw him. See id.

3

failure to stop at the scene of a property damage accident. The State also alleged that two offenses were committed while having previously been convicted of the offense of operating while intoxicated within the last five years.

Love filed a motion to suppress contending that the show-up identification procedure was unduly suggestive. Love requested that Brock's identification of him and the results of the investigation, including blood alcohol tests, field sobriety tests, and officer interviews and observations, be suppressed.

At the hearing on Love's motion to suppress, Brock identified Love as the driver of the red car.[2] Brock described the driver as a white man in his forties or fifties. Brock testified that he remembered the driver wearing a dark blue jacket that reminded him of a mechanic's jacket. Brock stated that he was unsure about the driver's height and weight because the driver was seated. Brock did not notice the driver wearing glasses or having any scars, tattoos, or unique facial features.

After the parties filed post-hearing briefs, the trial court denied Love's motion to suppress. Love filed an unopposed motion for interlocutory appeal, which the trial court granted. We have accepted jurisdiction over his interlocutory appeal.

**Analysis**

Love argues that the trial court erred in denying his motion to suppress because the show-up identification procedure was unduly suggestive. "We review a trial court's

---

[2] Love did not object to Brock's in-court identification of Love, but in his post-hearing brief Love challenged the in-court identification. The State does not argue that this issue was not properly preserved or that the argument is premature because the challenged in-court identification occurred during a suppression hearing, not at trial. Regardless, because of our holding that the show-up identification was not unduly suggestive, we need not address Love's argument regarding the in-court identification.

4

denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant." Robinson v. State, 5 N.E.3d 362, 365 (Ind. 2014). "We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence." Id.

"The Fourteenth Amendment's guarantee of due process of law requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive." Rasnick v. State, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013), trans. denied. "In some circumstances, a show-up identification 'may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process.'" Id. (quoting Hubbell v. State, 754 N.E.2d 884, 892 (Ind. 2001)). In reviewing challenges to show-up identifications, we examine the totality of the circumstances surrounding the identification, including:

> (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness's degree of attention while observing the offender; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification; and (5) the length of time between the crime and the identification.

Id. Identifications of a freshly apprehended suspect have been held to be not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations because of the value of the witness's observation of the suspect while the image of the offender is fresh in the witness's mind. Id.

Brock observed the driver of the red car for thirty seconds to one minute when he spoke to the driver immediately after the accident from near the open driver's side door. Brock was able to describe the driver's age, race, and clothing. Although Brock was worried after the accident, there is no indication that he was distracted when he spoke to the driver or that Brock's general description of the driver was inaccurate. Further, Brock was confident he could identify the driver prior to the show-up and immediately identified Love, as opposed to the other civilian, as the driver when he and Officer Collins approached the Bancroft Street residence. Finally, Brock identified Love as the driver less than fifteen minutes after the accident. Consideration of these factors does not support the claim that the show-up was unduly suggestive.

Love contends that this case is like Wethington v. State, 560 N.E.2d 496 (Ind. 1990), in which our supreme court concluded that the testimony regarding show-up identifications should have been suppressed. In Wethington, the victims of an armed robbery, who had been bound, gagged, and threatened at gunpoint, were asked to identify two suspects on the side of a road two hours after the crime. Police officers told the victims that they had picked up two hitchhikers and wanted to see if they were the individuals who had committed the crime. When the victims arrived at the intersection, there were three police cars and at least seven police officers, most of whom were in uniform, the suspects were handcuffed, and the weapons used in the commission of the offense were displayed on the hood of car. The victims identified one suspect immediately but were less sure about the identity of the second suspect. Three hours after the crime was committed, the victims were taken to a fire station meeting room

6

where numerous police and fire officials milled about the room and weapons used during the robbery and marijuana that had been taken during the robbery were displayed. The victims identified the various items, and the suspects were escorted into the room by police officers. Again the victims identified one suspect but were less sure about the identity of the second suspect.

Our supreme court concluded that displaying the suspects at the roadside and parading them at the fire station with the items of physical evidence so prominently featured and with so many law enforcement officials in attendance "was highly suggestive of guilt and totally unnecessary." Wethington, 560 N.E.2d at 502. The court observed that no exigent circumstances existed which precluded setting up a properly constituted lineup, "and the intervening time and events between the incident and the confrontations negated the freshness of the image in the minds of the victims as a justification for a one-on-one show-up." Id.

Here, when Officer Collins and Brock arrived at the Bancroft Street residence, there were two civilians standing among the two or three uniformed police officers and one or two squad cars, and neither civilian was handcuffed. Although Officer Collins had suggested to Brock that they had the driver in custody, Brock immediately identified Love as the driver as they approached before Officer Collins prompted him. As for Officer Collins's testimony that the red car was parked at the residence, at least initially, Brock did not specifically testify about the red car being there during the show-up.[3] Most

---

[3] Officer Collins was questioned, "And you said there was a red vehicle with front end damage at Bancroft Street. Did you see that when you initially went out to Bancroft?" Tr. p. 30. Officer Collins

7

significantly, unlike in <u>Wethington</u>, Brock identified Love less than fifteen minutes after the accident occurred, while the image of the driver was still fresh in his mind.

As for Love's argument that Brock did not get a good look at the driver so as to excuse the suggestiveness of the show-up, we are not persuaded. Love's challenge to Brock's opportunity to observe the driver because of the brevity of the encounter, the driver's struggle with the air bag, and Brock's nervousness about the being followed is a request to reweigh the evidence, which we cannot do. See <u>Robinson</u>, 5 N.E.3d at 367 (declining defendant's invitation to "substitute our own judgment for that of the trial court and rebalance the scales in her favor."). Love has not established that the trial court erred in denying his motion to suppress.

**Conclusion**

The trial court properly denied Love's motion to suppress. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

answered, "Yes." <u>Id.</u> Brock testified that marked squad cars were at the Bancroft Street residence when he arrived with Officer Collins and that he was not sure if there were other vehicles in the driveway. <u>See id.</u> at 22.