CRONE, Judge,
concurring in result.
[23] I agree with Judge Pyle’s affir-mance of the trial court’s determination that Burnell refused a chemical test, but I do not believe that we need go so far as to categorically hold that “anything short of an unqualified, unequivocal assent to a properly offered chemical test constitutes a refusal.” Supra at 777. Each case should be judged on its specific facts, and in my view the facts most favorable to the trial court’s determination in this case are sufficient to affirm it. .
[24] I also write separately because this case raises some questions left unanswered by our supreme court’s opinion in Robinson v. State, 5 N.E.3d 362 (Ind. 2014), regarding the proper standard for reviewing video evidence on appeal. In Robinson, the defendant was stopped for unsafe lane movement and charged with marijuana possession and operating while intoxicated. She filed a motion to suppress the evidence derived from the stop, arguing that the stop was not supported by reasonable suspicion because her vehicle never left its lane. The trial court denied the motion and ultimately found her guilty, giving more credence to the testimony of arresting officer Deputy Claeys than to the video from his in-car camera.
[25] In affirming Robinson’s convictions, our supreme court stated,
Robinson argues Deputy Claeys lacked reasonable suspicion to stop her vehicle and thus violated her rights under both the federal and state constitutions. As a threshold matter, both parties dispute the significance of the video evidence. Robinson notes the trial court conceded the video “did not clearly demonstrate that Robinson’s vehicle veered off the roadway ... but speculated that the officer’s observations at the scene were superior to his in-car camera.” The State, on the other hand, cautions us not to “rest [our] determination on minutia of an imperfect and rudimentary video.”
While technology marches on, the appellate standard of review remains constant. [W]e do not reweigh the evidence. Our colleagues in other states have taken a similar approach when faced with video evidence.
We do not believe, however, as some of our colleagues in other jurisdictions do, that the very act of reviewing video evidence constitutes impermissible appellate reweighing. Rather, we consider video evidence admitted in the trial court to be a necessary part of the record on appeal, just like any other type of evidence.
And just like any other type of evidence, video is subject to conflicting interpretations .
What is more, “the video record may ‘speak for itself,’ but it does not and cannot speak for the visual input a judge observes and interprets that falls outside the scope of the camera, nor does it filter events and behavior through his or her experience and expertise.” Bernadette Mary Donovan, Note, Deference in A Digital Age: The Video Record and Appellate Review, 96 Va. L.Rev. 643, 676 (2010). Although this statement was made in the context of a discussion of *779 appellate consideration of video trial transcripts, we believe the same reasoning applies to appellate consideration of video evidence, and even to law enforcement reaction to an evolving situation. Deputy Claeys, as he drove down County Road 4 on that October night, was observing Robinson’s ' vehicle through the lens of his experience and expertise. And when Deputy Claeys testified at the suppression hearing, the trial judge heard his testimony—along with the other witness testimony and evidence, including the video—through the lens of his experience and expertise. Ultimately, that experience and expertise led the trial judge to weigh Deputy Claeys’s testimony more heavily than the video evidence, and we decline Robinson’s invitation to substitute our own judgment for that of the trial court and rebalance the scales in her favor.
The trial court found, as a matter of fact, that to the extent Deputy Claeys’s testimony conflicted with the video, the former was more reliable than the latter. Deputy Claeys testified “both passenger side tires were over the fog line” and “completely off the roadway” “twice.” Thus, we must now decide whether those facts constitute reasonable suspicion for a traffic stop, as a matter of law, in accordance with our federal and state constitutions.
Id. at 365-67 (citations and footnotes omitted). The majority held that they did.
Here, the relevant portions>of Officer Kinyon’s testimony regarding Burnell’s traffic stop are largely consistent (or at least not inconsistent) with what the video shows. That being the case, is whether Burnell refused to take the chemical test a factual determination, which is entitled to deferential appellate review, or a legal conclusion, which requires no deference? See Woodcox v. State, 30 N.E.3d 748, 750 (Ind. Ct.App.2015) (“While we defer to the trial court’s factual determinations, we review legal conclusions de novo”) In other words, given that the relevant facts are essentially undisputed, are we in as good a position as the trial court to watch the video of the traffic stop and make- our own determination regarding whether Burnell refused to take the chemical test? That remains- an open question after Robinson, and I, for one, would welcome further clarification of the law in this area.