BROWN, Judge,
dissenting.
[27] I respectfully dissent from the majority’s conclusion that Burnell refused the chemical test. As noted above, our task on review is to “determine whether the evidence is sufficient as a matter' of law to support the flnding[ ] that ... the driver refused to submit to a chemical test offered by a law enforcement officer after being informed of the consequences of such refusal.” Upchurch, 839 N.E.2d at 1220. Under Indiana’s implied consent statute, Ind.Code § 9-30-6-1, “[a] person who operates a vehicle impliedly consents to' submit to the chemical test provisions, of this chapter as a condition of operating a vehicle in Indiana.” Today,.the majority adopts a rule that “anything short of an unqualified, unequivocal assent to a properly offered chemical test constitutes a refusal” and holds that Burnell refused the test under the rule. Supra at 777.
[28] Burnell was severely intoxicated when she was asked by Officer Kinyon to submit to the chemical test, which she readily admitted to him would result in a finding that she was, in fact, intoxicated. Transcript at 24 (“Well, I mean if I take it, I’m going to jail.”). Indeed,, at the hearing the taped conversation of Officer Kinyon with the on-call prosecutor was played in which Officer Kinyon told the prosecutor that Burnell “PBT-ed at 2-9-5 with *780 some—with some of the worst field sobriety I’ve -.ever seen.” Id. at- 27. When asked to submit to the chemical test Bur-nell, who had been largely cooperative with Officer Kinyon by performing numerous field sobriety tests and submitting to a PBT,- briefly considered her options, in which she remarked that regardless of whether she hook-the -chemical test she was going to jail, and then answered: ‘iSo yeah, I guess--I gotta take it.” Id. at 24. At about the same time, and while flanked by Officer Kinyon and another officer, she took a step and was immediately restrained. Officer Kinyon told her that he was “going to take her refusal to answer [the] question as a refusal” and she was placed in handcuffs. Id. at 25.
[29] The majority acknowledges that the facts presented here are distinguishable from those of the cases it discusses, noting that “the issue' of equivocation alone when responding to an officer’s request to take a chemical test” -is an issue of first impression. Supra at 776. The facts of Thacker involved a man who twice verbally consented to take the- chemical test, but when his legs were freed “he immediately became violent, kicking the officers and resisting their attempts to remove him from the patrol car” and the decision was made to not administer the test “because his violence constituted a threat to the examining-equipment,” 441 N,E.2d at 709. This court held that “recalcitrant-behavior” such as Thacker’s “which physically impedes or threatens to impede the administration of the test” constituted ;a refusal to submit to,the. test. Id. at 711.
[30] The Thacker court discussed the other cases relied upon by the majority, Hatch and Davis. Id. at 710. Hatch'involved a driver who “took the mouthpiece to his mouth but would not blow into it with sufficient force to fill the sample capsule,” and this court “treated the failure to ■give a suitable sample as a refusal to take the test;” Id. The question in Davis was whether the right to counsel applied to Indiana’s Implied Consent Law, in which this court held that “Davis had no constitutional right to consult with counsel prior to or during the taking of the test,...” Id. The court reasoned, citing to an opinion from the -Superior court of New Jersey, Appellate Division, that “the remedial purpose of the statute, and the, rapidity with which the passage of time and the physiological- processes tend to eliminate evidence of ingested alcohol in the system” suggest that the statute be construed such that. “anything substantially short of an unqualified,, unequivocal assent to an officer’s request that the arrested motorist take the test constitutes a refusal to do so. The occasion is not one for debate, maneuver or negotiation,, but rather for a simple ‘yes’ or ‘no’ to the officer’s request.” Id. .at 710-711 (quoting Davis, 174 Ind.App. at 437, 367 N.E.2d at 1166 (quoting Pandoli, 262 A.2d at 42)) (emphasis' and brackets omitted).
[31] Unlike our previous cases, here there is no evidence that Burnell attempted to hinder Officer Kinyon’s, investigation into, her state of intoxication by either physically resisting or feigning an attempt to perform the test, or. otherwise delay taking the test by requesting counsel. Faced with the question from Officer Ki-nyon, an intoxicated Burnell weighed her choices (arid in doing so admitted that she was intoxicated) and, resigned tb her fate, told him “I guess I gotta take it.” Transcript at 24. I would find that Burnell’s statement was not “substantially■ short of an unqualified, unequivocal assent,” Pandoli, 262 A.2d at 42 (emphasis added), and that accordingly the evidence presented did not establish as a matter of law that she refused to submit to the chemical test under Ind.Code § 9-30-6-9(b). I would reverse the court’s order on Burnell’s peti *781 tion for judicial review and reinstate her driving privileges.[2]

. -Regarding Burnell’s movements made at around the time she told Officer Kinyon “I guess I gotta take it,” in reviewing the relevant portion of the video I observed Burnell facing Officer Kinyon with her hands in her pockets, and while she is stating ”[w]ell if I refuse, I’m going to jail either way,” she begins to rock backwards and takes a step or two in that direction, State’s Exhibit 1 at Car 48, 20:49:18-23. She then begins to move forward and takes at most four small steps while stating "I guess I gotta take it,” and Officer Kinyon; without moving his feet, grabs her by the arm; tells her "don't go anywhere," and she steps- backward. Id. at 20:49:23-32. After Officer Kinyon lets go, she takes a step to the side while facing Officer Kinyon, and she is promptly grabbed by him and another officer, who is standing a few feet behind 'her, and placed in handcuffs. Id. at 20:49:32-52. While I may not substitute my own review of this video evidence "for that of the trial court and rebalance the scales,” Robinson v. State, 5 N.E.3d 362, 367 (Ind.2014), I believe her movements to be immaterial because there is nothing in the record, and indeed the court does not find,- that these steps were an attempt to elude the officers or otherwise create . a delay in taking the test. The question pre- ' sented here concerns "equivocation alone when responding to an officer’s request to take a chemical test....” Supra at 776. Also, despite the court’s finding that Burnell, "wouldn’t stop interrupting” and "wanted to argüe with” Officer Kinyon, and that she “kept referring to her uncle the police officer,” Transcript at 32, as noted by the majority such conduct occurred only prior to Officer Kinyon’s direction that he needed a yes or no answer, again to which Burnell responded by stating “I guess I gotta take it.” Id. at 24.