## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2018, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gail Miller,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 5, 2018

Court of Appeals Case No.
18A-CR-1554

Appeal from the Marshall Superior Court

The Honorable Dean A. Colvin, Judge

Trial Court Cause No.
50D02-1503-CM-176

**Baker, Judge.**

[1] Gail Miller appeals his conviction for Class A Misdemeanor Possession of Marijuana,[1] arguing that the trial court erroneously admitted certain evidence. Finding no error, we affirm.

## Facts

[2] At approximately 11:00 p.m. on February 27, 2015, Bremen Police Sergeant Trent Stouder was on patrol on U.S. Highway 6 when he began to follow a silver Nissan Pathfinder. Sergeant Stouder observed the vehicle's passenger side tires cross the fog line; the vehicle then weaved in its own lane as it overcorrected. About three-quarters of a mile later, the vehicle again crossed the fog line. Sergeant Stouder planned to pull over the vehicle but waited because there were "no other vehicles on the roadway coming at us or anything like that. I knew I had plenty of time. And I was waiting to get to a better lighted area." Tr. Vol. II p. 51.

[3] About two and one-half miles later, Sergeant Stouder initiated a traffic stop. He approached the vehicle and smelled the odor of an alcoholic beverage and raw marijuana emanating from inside. Sergeant Stouder saw an open can of beer on the passenger side floorboard.

[4] Sergeant Stouder asked the driver, Miller, if he had been drinking; Miller stated that he had had two drinks earlier in the evening. The sergeant noticed that

---

[1] Ind. Code § 35-48-4-11.

Miller's eyes were bloodshot. Miller agreed to take a portable breath test, which indicated the presence of alcohol on his breath. Sergeant Stouder asked Miller for consent to search the vehicle; Miller declined. At that point, Sergeant Stouder retrieved his police dog, which performed a free air sniff test around the outside of the vehicle. The dog alerted, indicating the presence of illicit substances.

[5] After the dog alerted, Sergeant Stouder returned to talk to Miller, noticing a strong odor of raw marijuana coming directly from Miller. Sergeant Stouder eventually asked Miller to exit the vehicle; he later conducted a thorough search of Miller and found a plastic bag stuffed down his pants. The bag contained marijuana. Miller was arrested and taken to the police station, where he submitted to three field sobriety tests, failing all three.

[6] On March 9, 2015, the State charged Miller with Class A misdemeanor operating a vehicle while intoxicated, Class A misdemeanor possession of marijuana, and two Class C infractions—unsafe lane movement and having an open alcoholic beverage container while operating a motor vehicle. After Miller's May 31, 2018, jury trial, the jury found him guilty of possession of marijuana and liable for operating a motor vehicle with an open alcoholic beverage container; it found him not guilty of and not liable for the remaining charges. On June 14, 2018, the trial court sentenced Miller to 365 days, suspended to probation, for the Class A misdemeanor. Miller now appeals.

# Discussion and Decision

[7] Miller argues that the trial court erred by admitting evidence stemming from the traffic stop. He contends that the traffic stop violated his rights under the United States and Indiana Constitutions. An issue of the constitutionality of the search or seizure of evidence raises a question of law, to which we apply a de novo standard of review. *E.g.*, *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014).

[8] Turning first to the United States Constitution, we note that under the Fourth Amendment, police officers may make brief traffic stops of citizens when they have reasonable suspicion that a crime is occurring. *Rutledge v. State*, 28 N.E.3d 281, 290 (Ind. Ct. App. 2015). Reasonable suspicion exists "'where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur.'" *Id.* (quoting *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999)).

[9] We find our Supreme Court's decision in *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014), to be dispositive. In *Robinson*, a police officer observed a vehicle veer off the roadway twice, with its passenger side tires crossing the fog line. Our Supreme Court found that the subsequent traffic stop did not violate the driver's Fourth Amendment rights because she "swerved *twice* on a relatively straight, flat roadway." *Id.* at 368 (emphasis original, also noting that the Fourth Amendment does not require police to grant drunk drivers "one free

swerve" before they can be pulled over). Our Supreme Court emphasized that officers need not be absolutely certain of illegal activity; rather, they must merely have reasonable suspicion. *Id.* In that case, the driver's behavior created the requisite reasonable suspicion.

[10] Here, as in *Robinson*, Sergeant Stouder observed Miller's vehicle veer off the roadway twice, with the passenger side tires crossing the fog line and the vehicle then weaving within its own lane. Sergeant Stouder testified that based on his experience, this behavior was indicative of impaired driving. We find that this situation would cause an ordinarily prudent person to believe that criminal activity has or was about to occur.

[11] Miller attempts to distinguish the instant case from *Robinson*, emphasizing the fact that Sergeant Stouder continued to follow Miller's vehicle for over two miles after the second swerve before initiating the traffic stop. According to Miller, this delay means that Stouder must not have had a reasonable suspicion of criminal activity or an urgent sense that criminal activity was afoot.

[12] We disagree. We are unaware of any caselaw suggesting that an officer must immediately initiate a traffic stop after observing problematic driving behavior for the stop to be constitutional. Indeed, here, Sergeant Stouder testified that he was hoping to find a better lit spot on the roadway to initiate the traffic stop, which is eminently reasonable given that it helped to ensure the safety of both the sergeant and the occupants of the vehicle. He also observed that there were no other drivers on the road, causing him to reasonably conclude that an

immediate stop was not necessary. Under these circumstances, we do not find the delay between the second swerve and the traffic stop to be a persuasive fact distinguishing this case from *Robinson*. Therefore, as in *Robinson*, we find that Sergeant Stouder had reasonable suspicion to pull over Miller's vehicle. In other words, the stop did not violate Miller's Fourth Amendment rights.

[13]     Next, Miller contends that the traffic stop violated his rights under Article 1, Section 11 of the Indiana Constitution. Under this provision, the analysis focuses on the reasonableness of police conduct in its totality. *E.g.*, *Sandleben v. State*, 29 N.E.3d 126, 134 (Ind. Ct. App. 2015). In looking at the totality of the circumstances, we examine three factors: (1) the degree of concern, suspicion, or knowledge that a violation of law has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Watkins v. State*, 85 N.E.3d 597, 601 (Ind. 2017).

[14]     Here, Sergeant Stouder observed Miller drive over the fog line twice in a relatively short period of time—the entire encounter covered only a few miles of roadway—giving rise to a reasonable suspicion that Miller was impaired. The initial intrusion—a simple traffic stop—was relatively minor, and the sergeant only escalated the stop after he smelled strong odors of alcohol and raw marijuana emanating from the vehicle and observed an open beer can inside. Finally, our Supreme Court has emphasized that "[l]aw enforcement has a strong interest in preventing these [alcohol-related] accidents, and 'police should have every legitimate tool at their disposal for getting drunk drivers off

the road.'" *Robinson*, 5 N.E.3d at 368 (quoting *Virginia v. Harris*, 558 U.S. 978, 978 (2009) (Roberts, C.J., dissenting from denial of certiorari)). We find that under the totality of the circumstances, the traffic stop did not violate Miller's rights under the Indiana Constitution. *See Robinson*, 5 N.E.3d at 368 (finding that traffic stop did not violate driver's rights under Article 1, Section 11).

[15]   Because the traffic stop violated neither the federal nor the state constitutions, the trial court did not err by admitting the evidence stemming from the stop.

[16]   The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.