## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Danny James Horton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 11, 2016

Court of Appeals Case No.
79A05-1507-CR-990

Appeal from the Tippecanoe
Superior Court.
The Honorable Steven P. Meyer,
Judge.
Cause No. 79D02-1403-FB-5

**Sharpnack, Senior Judge**

## Statement of the Case

Danny James Horton appeals from his conviction of unlawful possession of a firearm by a serious violent felon[1], a Class B felony, and an habitual offender determination. We affirm and remand for resentencing.

## Issues

Horton presents the following issues for our review:

    I.    Whether the trial court abused its discretion by excluding a defense witness during the second phase of Horton's jury trial for violating an order separating the witnesses;

    II.    Whether the trial court abused its discretion by denying Horton's motion to suppress and admitting evidence at trial that was seized after law enforcement officers executed a search warrant; and

    III.    Whether the trial court committed a sentencing error on the habitual offender enhancement.

## Facts and Procedural History

On February 25, 2014, Lafayette Police Department Sergeant Brian Brown received information that Horton was wanted on an outstanding warrant from Warren County, Indiana, and was being investigated for weapons and narcotics. Sergeant Brown examined the law enforcement records management system and discovered that Horton had an incident approximately two years

---

[1] Ind. Code § 35-47-4-5 (2012).

prior involving fleeing law enforcement, narcotics, and weapons. He also verified that the arrest warrant from Warren County was still active.

[4] Sergeant Brown had been contacted by officers working for the United States Marshal's Office informing him that they had been running surveillance on Horton and had narrowed his location to one particular house in Lafayette. Officers had spoken to three individuals who had recently left that house and asked them if Horton was inside. The first person, Jennifer Ellison, the owner of the home and Horton's girlfriend, told the officers that Horton was not inside the house and that she had not seen him for two weeks. Two individuals who left the house later, Justin Rossi, Ellison's step-son, and Jonathan Henson, Rossi's friend, told officers that Horton was in the house, there were guns in the house, and that they had observed Horton carrying a handgun.

[5] Brown obtained a search warrant for Ellison's house, but before it could be executed, Horton was taken into custody a short distance away. When Sergeant Brown arrived on the scene with the search warrant, officers executed the warrant and searched Ellison's house. While searching, they found marijuana hidden in the master bedroom, a rifle hidden beside a dryer, and ammunition for the rifle and other weapons. Officers applied for and obtained an amended search warrant, which was executed. After being advised of his rights, Horton was interviewed by Brown and an A.T.F. agent. Horton admitted that he possessed the rifle, but explained he was going to repair it for another person.

[6] On March 3, 2014, the State charged Horton with Class B felony unlawful possession of a firearm by a serious violent felon, Class A misdemeanor possession of marijuana, and Class A misdemeanor possession of paraphernalia. Later, the State added an habitual offender allegation.

[7] On July 24, 2014, Horton filed a motion to suppress the firearm, marijuana, paraphernalia, and his statements to police on constitutional grounds. He argued that the items seized were inadmissible because: 1) they were seized pursuant to a search warrant that was not supported by probable cause or reliable information; 2) the information supporting the warrant was stale and anticipatory; 3) the warrant lacked specificity of the items to be seized; and, 4) the search exceeded the scope of the warrant. With respect to his statements, Horton argued that he was questioned by law enforcement officers without the benefit of receiving his *Miranda* warnings.

[8] On September 18, 2014, the trial court held a hearing on Horton's motion to suppress after which it took the matter under advisement and requested that the parties brief the matter by October 8, 2014.

[9] Horton's memorandum in support of his motion to suppress maintained the position that the search warrant was not based on reliable information because Rossi and Henson's information was not corroborated prior to the search. Horton argued in the alternative, that if the search warrant was proper, the scope of the search was overbroad. With respect to Horton's statement to police officers, Horton argued for the first time that his interrogation was

similar to the one conducted in *Payne v. State*, 854 N.E.2d 7 (Ind. Ct. App. 2006). In *Payne*, a defendant's conviction was reversed because of the erroneous admission of both her pre-*Miranda* statements to police, occurring during the first seven hours of interrogation, and her post-*Miranda* statements, occurring in the approximately four additional hours of interrogation.

[10] In its response, the State argued in support of the admissibility of the evidence seized pursuant to the search warrant. However, no argument was made in support of the admissibility of Horton's statements to police.

[11] On October 15, 2014, the trial court entered an order denying Horton's motion to suppress the evidence seized pursuant to the warrant, finding that it was supported by reliable, corroborated information and that the scope of the search was not overbroad. The trial court, however, granted the motion to suppress Horton's statements to police, citing the State's failure to present an argument against that part of Horton's motion.

[12] On November 10, 2014, the State filed a motion to reconsider the trial court's order granting Horton's motion to suppress his statements, citing argument and evidence presented by the State at the hearing on the motion to suppress. In support of the motion to reconsider, the State cited its overview of the evidence including the details of Horton's recorded statement and that Horton received his *Miranda* warnings. The State also noted Sergeant Brown's testimony at the suppression hearing about: 1) conducting the recorded interview with Horton on February 26, 2014; 2) reading a waiver of *Miranda* rights to Horton; 3)

confirming that Horton understood his rights; and, 4) observing Horton sign a written waiver. The recorded statement and Horton's written waiver were admitted at the hearing. The State also challenged Horton's reliance on *Payne*, contending that Horton's interview was not similar. The trial court granted the State's motion to reconsider by order dated December 15, 2014.

[13] On May 20, 2015, Horton filed a motion requesting an order in limine prohibiting at trial any mention of: 1) Horton's prior arrests or convictions; 2) his pending habitual offender status; 3) that Horton currently was in custody; and, 4) the outstanding warrant for Horton's arrest on a different matter at the time he was arrested for this offense. Horton also requested a separation of witnesses. The next day, Horton filed a supplemental motion requesting that the order in limine also suppress evidence obtained as a result of the search warrant and Horton's statement to police. On May 26, 2015, the State filed a motion requesting an order in limine, which among other things, asked for a separation of witnesses save for the assisting law enforcement officer remaining at counsel table with the State.

[14] Horton's jury trial began on May 26, 2015. The trial court entered an order separating the witnesses and identifying the phases of the trial. The misdemeanor charges of possession of marijuana and possession of paraphernalia would be tried until a verdict was reached in phase one. The second phase of the trial would involve resolution of the felony charge of unlawful possession of a firearm by a serious violent felon. If necessary, the

third phase of the trial would be held to determine Horton's habitual offender status.

[15] The jury acquitted Horton of the misdemeanor charges in phase one of the trial. Phase two of the trial began immediately after the verdicts were returned in phase one. On May 28, 2015, during phase two, Horton's counsel, obligated by his ethical duty to the trial court, informed the court of a potential violation by Ellison and Horton of the order separating witnesses. Ellison had previously testified in phase one of the trial and was to testify on behalf of Horton in phase two.

[16] Ellison was questioned outside the presence of the jury about the potential violation. Under questioning by the defense, Ellison stated that when she visited Horton at the jail, she and Horton only discussed family and a legal matter in another county. She testified that Horton started to talk about the case, but she prevented him from saying much.

[17] When questioned by the State, Ellison acknowledged that she had testified at trial the previous day and that she had been advised by Horton's counsel about the order separating witnesses. She testified, however, that she did not think that the order applied to Horton. She admitted that she and Horton had discussed evidence in the case, facts about the case, and other witnesses' testimony.

[18] After Ellison was excused from the courtroom, the State informed the trial court that police officers were asked to review jail telephone records. They

found two telephone calls between Horton and Ellison made after the separation order was entered. Defense counsel informed the trial court that he intended to call Ellison as a witness in phase two to testify about the layout of her house and to the fact that she moved the rifle from the garage into the laundry room.

[19] The trial court listened to the recordings of the telephone conversations between Horton and Ellison. In them, Horton acknowledged that he was aware of the order separating witnesses, yet the two discussed the testimony of various witnesses after the order was issued. The trial court then granted the State's motion to exclude Ellison's testimony during phase two over Horton's objection.

[20] At the conclusion of phase two of the trial, the jury found Horton guilty of unlawful possession of a firearm by a serious violent felon. Horton waived his right to a jury trial on phase three, and the trial court found Horton to be an habitual offender.

[21] During sentencing, the trial court found the aggravating circumstances of Horton's criminal history, that he was out on bond, and that he was on parole at the time he committed this offense, outweighed the lack of mitigating circumstances. The trial court sentenced Horton to eighteen years executed in the Department of Correction with a sentence of ten years executed for the habitual offender enhancement, to be served consecutively. The trial court entered a corrected sentencing order setting forth the accurate name of the

crime. The trial court issued a second corrected sentencing order setting forth the accurate count upon which the conviction was entered. Horton now appeals.

# Discussion and Decision

## I. Exclusion of Witness

[22] Horton argues that the trial court abused its discretion by excluding Ellison's testimony in phase two of his jury trial. Evidence Rule 615 provides for the separation of witnesses for the purpose of preventing them from hearing other witness testimony. Indeed, a well-settled element of Indiana procedural law provides that "[t]he purpose of a separation order is to prevent witnesses from changing their testimony according to the questioning and testimony of those preceding them at trial." *Garland v. State*, 439 N.E.2d 606, 608 (Ind. 1982), (superseded by rule as stated in *Hernandez v. State*, 716 N.E.2d 948, 950 (Ind. 1999) (trial court required to grant motions for separation of witnesses)).

[23] Appellate review of a trial court's decision to exclude evidence based on a violation of a separation order is for an abuse of discretion. *Jiosa v. State*, 755 N.E.2d 605, 607 (Ind. 2001) (citing *Goolsby v. State*, 517 N.E.2d 54, 61 (Ind. 1987)). When a violation of a witness separation order occurs, it is within the trial court's discretion as to the course of action to be followed. *Cordray v. State*, 687 N.E.2d 219, 221 (Ind. Ct. App. 1997).

[24] "Permitting a witness to testify in violation of a separation of witnesses order is a matter within the sound discretion of the trial judge and we will not disturb

the exercise of that discretion unless there is a showing that there was such prejudice to the defendant that there was an abuse of discretion." *Wireman v. State*, 432 N.E.2d 1343, 1349 (Ind. 1982). An abuse of discretion is found where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[25] Although a defendant has a right under the Sixth Amendment to the United States Constitution to present witnesses on his behalf, this right is not absolute. *Townsend v. State*, 26 N.E.3d 619, 627 (Ind. Ct. App. 2015), *trans. denied.* A trial court may exclude the testimony of a party's witness who violates the order separating witnesses if the party is at fault. *Jiosa v. State*, 755 N.E.2d 605, 608 (Ind. 2001).

[26] The record before us establishes that the trial court did not abuse its discretion by excluding Ellison's testimony during phase two of Horton's trial. Horton and Ellison were aware of the order separating witnesses. Horton and Ellison discussed the testimony of other witnesses who had testified at trial in clear violation of the court's order.

[27] Furthermore, the trial court's decision finds support in Horton's admission that he received the rifle from a friend, he was going to repair it for his friend, described the needed repairs, and informed officers that he was the person who placed the rifle next to the dryer. Therefore, exclusion of Ellison's testimony in phase two did not prejudice Horton's defense. There was no abuse of discretion in the exclusion of Ellison's testimony during phase two of Horton's trial.

## II. Admission of Seized Evidence

[28] Horton argues that the trial court erred by denying his motion to suppress. Horton argues that the probable cause supporting the search warrant was deficient because it was based on uncorroborated hearsay information.

[29] When a case proceeds to trial, review of a trial court's ruling on a motion to suppress is no longer viable. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). When an objection to the evidence is lodged at trial, the issue on appellate review is whether the trial court abused its discretion by admitting the evidence at trial. *Id.* The general admission of evidence at trial is left to the sound discretion of the trial court. *Id.* We will reverse the trial court's decision only when admission of the evidence is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* Based upon the arguments before us, we will analyze this issue under the Fourth Amendment to the United States Constitution only.

[30] The Fourth Amendment to the U.S. Constitution protects persons from unreasonable search and seizure by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause. *Id.* at 260. As a deterrent, evidence obtained in violation of this rule is generally inadmissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. *Id.* Probable cause means a probability of criminal activity, not a prima facie showing. *Seltzer v. State*, 489 N.E.2d 939, 941 (Ind. 1986).

[31] When a probable cause affidavit is based on hearsay, the affidavit must either contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished, or contain information that establishes that the totality of the circumstances corroborates the hearsay. Ind. Code § 35-33-5-2(b) (2014).

[32] Upon appellate review of the trial court's decision, we focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind. 2009). "Where a presumption of the validity of the search warrant exists, the burden is upon the defendant to overturn that presumption." *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003). We do not reweigh the evidence. *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008).

[33] Upon our deferential review of a trial court's denial of a defendant's motion to suppress, we construe conflicting evidence in the light most favorable to the ruling, but also consider any substantial and uncontested evidence favorable to the defendant. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). We defer to the trial court's findings of fact unless they are clearly erroneous. *Id.* When a trial court denies the defendant's motion to suppress on constitutional grounds, it presents a question of law, which we address de novo. *Id.* We may affirm a trial court's judgment on any theory supported by the evidence, and on any legal ground apparent in the record. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002).

[34] Sergeant Brown's probable cause affidavit stated that the Lafayette Police Department was contacted on February 25, 2014, by an agent with the U.S. Marshal's Fugitive team regarding an individual identified as Danny "Boone" Horton. Horton was wanted on a warrant out of Warren County for failure to appear for charges associated with dealing in methamphetamine. Brown obtained a copy of the warrant from the Warren County Sheriff's office on February 25, 2014, confirming that the warrant was still active. While attempting to locate Horton, officers with the U.S. Marshal's Office observed Horton enter Ellison's residence. They maintained surveillance of the residence and observed Ellison leave. When questioned by the officers, Ellison claimed that Horton was not at her home, that she had not seen him in two weeks, and she declined to allow officers to check her residence.

[35] After Ellison left, two other people exited the home and were questioned by the officers maintaining surveillance. Justin Rossi was Ellison's stepson, and Jonathan Henson was a friend of Rossi's. They both said that Horton was in Ellison's house at the time they left, that he was carrying a handgun, and that there were other firearms in the house, including a rifle in the garage, that belonged to Horton.

[36] The affidavit also stated that Horton had a prior conviction for Class B felony burglary, making it illegal for him to possess any firearms. Brown stated that he believed Henson and Rossi to be reliable and credible because they spoke from personal knowledge and had no known reason to lie. The officers with the U.S. Marshal's office and Lafayette Police Department were also believed to be

credible because they spoke from personal knowledge obtained in their capacities as law enforcement officers.

[37] The information in the affidavit provided sufficient probable cause for the issuance of the search warrant for Ellison's house and, though based upon hearsay, was based upon reliable and credible hearsay. Independent police investigation corroborated the witnesses' statements. *See Fry v. State*, 25 N.E.3d 237, 244 (Ind. Ct. App. 2015), *trans. denied*. Furthermore, these witnesses—Henson and Rossi—were identified. Concerned or cooperative citizens are entitled to some degree of credibility and reliability for purposes of probable cause. *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011).

[38] Additionally, as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in the search warrant. *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992). Brown corroborated information from officers about the active warrant from Warren County by obtaining a copy of the warrant. Officers observed whom they believed to be Horton enter Ellison's house. Henson and Rossi stated to officers that Horton was in the house, that they had observed him with a handgun and that other firearms were present. Given the totality of the circumstances, we cannot say that the affidavit lacked sufficient probable cause to search Ellison's home. Horton has not overturned the presumption of validity of the search warrant. The trial court did not abuse its discretion by admitting evidence seized during the search.

### III. Sentencing Error

Horton briefly argues and the State concedes that the trial court erred by imposing a separate, consecutive sentence for Horton's habitual offender adjudication. The trial court sentenced Horton to eighteen years executed in the Department of Correction with a sentence of ten years executed for the habitual offender enhancement, to be served consecutively.

An habitual offender adjudication does not constitute a separate crime nor does it result in a separate sentence. *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997). An habitual offender adjudication results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Id.* We remand this matter to the trial court for purposes of resentencing Horton with instructions to enhance his sentence for his conviction of unlawful possession of a firearm by a serious violent felon due to his habitual offender adjudication.

## Conclusion

In light of the foregoing, we affirm the trial court's decision regarding the sanction for the violation of the order separating witnesses and the admission of evidence seized pursuant to the search warrant. However, we remand this matter for resentencing.

Affirmed in part, and remanded in part with instructions.

Najam, J., and Riley, J., concur.